(C. D. 1793)

VANDERGRIFT FORWARDING CO.
LASSO TAPES, INC. } v. UNITED STATES

United States Customs Court, First Division

(Decided July 19, 1956)

*Michael Stramiello, Jr.*, for the plaintiffs.
*George Cochran Doub*, Assistant Attorney General (*Murray Sklaroff* and *Richard E. FitzGibbon*, trial attorneys), for the defendant.

Before OLIVER, MOLLISON, and WILSON, Judges

OLIVER, Chief Judge: These two protests, which were consolidated at the time of trial, involve merchandise described on the invoices as "LASSOPHANE Self Adhesive Tape." The merchandise covered by

entry 738147, exported in September 1950, was assessed with duty at the rate of 50 per centum ad valorem under the provision in paragraph 31 (b) (2) of the Tariff Act of 1930, as modified by T. D. 51802, reading as follows:

All compounds of cellulose (except cellulose acetate, but including pyroxylin and other cellulose esters and ethers) * * *

\*         \*         \*         \*         \*         \*         \*

Finished or partly finished articles not specially provided for, made in chief value from transparent sheets, bands, or strips not more than three one-thousandths of one inch in thickness.          .

The imported items covered by entry WH 40574 were assessed at the rate of 25 per centum ad valorem under substantially the same provision in paragraph 31 (b) (2), as modified by T. D. 52739.

Plaintiffs make several claims. It is alleged that the merchandise is properly classifiable, either, by similitude, as gummed papers, not specially provided for, under paragraph 1405 of the Tariff Act of 1930, as amended by T. D. 52739, carrying a dutiable rate of 2½ cents per pound; or, by virtue of the mixed materials clause in paragraph 1559 of the Tariff Act of 1930, as a manufacture of rubber, not specially provided for, under paragraph 1537 (b) of the Tariff Act of 1930, with a duty assessment of 25 per centum ad valorem; or, as a nonenumerated manufactured article under paragraph 1558 of the Tariff Act of 1930, carrying a dutiable rate of 20 per centum ad valorem. The claim in protest 236474–K that the merchandise "is properly classifiable at 15% ad valorem under the provisions of paragraph 41 of the Tariff Act of 1930, as modified," has been abandoned.

The articles in question, as disclosed from an examination of the samples (plaintiffs' illustrative exhibits 1 and 2), are rolls of self-adhesive tape, being, in general appearance, what is ordinarily recognized as scotch tape. Each of the sample rolls in evidence is of a different size and diameter. One of them (plaintiffs' illustrative exhibit 1) has a cardboard core in the center of the roll and a paper wrapping around it. The other sample (plaintiffs' illustrative exhibit 2) has the core and the wrapping removed.

Plaintiffs' oral testimony was elicited from the president of the importing corporation, Lasso Tapes, Inc., whose business is the "buying and selling of adhesive tapes." The witness' testimony was directed toward the matter of similitude between the imported adhesive tapes and gummed paper. On direct examination, the witness stated that both commodities—these adhesive tapes and gummed paper—are used for "sealing packages, holding, and securing." On cross-examination, he explained certain essential differences between the two products. Confronted with gummed paper (defendant's illustrative exhibit A), the witness admitted that such paper is opaque, while the adhesive tapes in question are transparent. He stated

further that gummed paper must be moistened for effective use, whereas pressure alone is sufficient for practical use of the imported adhesive tapes. In his testimony on redirect examination, the witness stated that although some gummed papers, like the merchandise in question, is pressure sensitive, all gummed paper is opaque. There are no gummed papers that are transparent, like the self-adhesive tapes in question.

Plaintiffs' evidence concerning the manufacturing processes and costs entering into the production of the self-adhesive tapes under consideration was obtained by depositions taken pursuant to commissions issued out of this court. Such testimony was obtained from two employees—the works manager and a cost accountant—of the foreign manufacturer of this merchandise. The combined testimony of those witnesses will support the following summary.

In manufacturing the adhesive tapes, the initial process is the preparation of a "self-adhesive compound," consisting of pure rubber, resin, and tackifiers (identified as polybutine, wool fat, antioxidant, and benzene), that are dispersed or dissolved in petroleum spirit. This adhesive preparation—hereinafter referred to as "the adhesive mass"—is applied "by a conventional adhesive spreading machine to the film base of regenerated cellulose in a regular and even coating." The basic material is generally known as cellophane. The adhesive filmic material is hung on drying frames until the solvent of petroleum spirit has evaporated. The resulting "dry-adhesive web" is then passed through a slitting machine, that slits the material into required widths and winds the material upon the center core.

The manufacturing costs associated with the imported adhesive tapes are set forth in the following tabulation, taken from plaintiffs' brief, where the costs are identified as follows:

* * * the costs of the tape and of the adhesive mass in their condition at the time that they were combined for each size exported to Lasso Tapes, Inc. were:

| Size | Cost of cellophane | Cost of adhesive |
|------|--------------------|------------------|
| ½ inch x 36 yds. | 2.42 pence | 2.82 pence |
| ¾ inch x 36 yds. | 3.63 pence | 4.23 pence |
| ⅜ inch x 72 yds. | 3.63 pence | 4.23 pence |
| ½ inch x 72 yds. | 4.84 pence | 5.64 pence |
| ¾ inch x 72 yds. | 7.26 pence | 8.46 pence |
| 1 inch x 72 yds. | 9.68 pence | 11.28 pence |

* * * the following materials in the following proportions were used in manufacturing the adhesive covering the tapes at bar:

| Material | Cost per pound | Proportion used |
|----------|----------------|-----------------|
| pale crepe rubber | 5 shillings, 9.5d. | 0.0750 |
| colophony resin | 10.82 pence | 0.0675 |
| polybutine | 1 shilling, 3.5d. | 0.0125 |
| wool fat | 1 shilling | 0.0375 |
| antioxidant | 3 shillings, 7d. | 0.0010 |
| benzene | 8.93 pence | 0.0034 |
| petroleum ether | 5.72 pence | 0.8031 |

In the course of the process of manufacture and after the "adhesive mass" is combined with the "cellophane," the "petroleum ether" is evaporated and completely lost. The cost of the "cellophane" was 2 shillings, 9.5 pence per pound, and 2.473 pounds of the "adhesive mass" were used with each pound of the "cellulose."

Defendant introduced the testimony of the assistant technical director of the Permacel Tape Corp., a domestic manufacturer of pressure-sensitive tapes. The witness stated that he is responsible for some of the research concerning the method of manufacture and the chemical makeup of his employer's products. He testified that the processes followed in manufacturing the imported self-adhesive tapes, as described in plaintiffs' testimony hereinabove set forth, are identical with those followed by his employer in the production of pressure-sensitive tapes. Much of the witness' testimony explains the function and the properties of the "petroleum ether," used in preparing the "adhesive mass." In this connection, he stated that the "petroleum ether" has no adhesive properties, that it acts solely "as a carrier for the adhesive in order to apply it," and that the "petroleum ether" must be removed before the finished tape can acquire adhesive qualities. The "petroleum ether" is removed by evaporation, "passing it through a drier, usually with heat and air to carry the solvent away." Then, the self-adhesive tapes are wound on rolls for commercial distribution. Following his examination of the merchandise in question (plaintiffs' illustrative exhibits 1 and 2), the witness stated that it contains no petroleum spirit.

Before discussing the issues involved herein; it should be noted that the statutory words, "component material of chief value," defined in paragraph 1558 of the Tariff Act of 1930, are not contained in the provision invoked by the collector. The pertinent statutory language is *"made in chief value* from transparent sheets" [italics supplied], paragraph 31 (b) (2), as modified, *supra.* The difference in words is not of substance between the two provisions. "It is the general rule that when the terms 'composed of', 'made of', 'manufactured of', etc., are used in tariff statutes with reference to the component material of an article, it is sufficient, to warrant classification under such statutes, that the designated article be in chief value of such material." *American Shipping Co., Husney & Co.* v. *United States,* 22 C. C. P. A. (Customs) 72, T. D. 47064. The rule for determining the component material of chief value applies herein. That rule, as set forth in *United States* v. *Rice-Stix Dry Goods Co.,* 19 C. C. P. A. (Customs) 232, T. D. 45337, is as follows:

This court has repeatedly held that the proper method of determining component material of chief value is to ascertain the costs of the separate parts or component materials to the manufacturer at the time they are ready to be assembled or combined into the completed article. *United States* v. *Mrs. S. Bacharach,*

18 C. C. P. A. (Customs) 353, T. D. 44612; *Turner & Co. et al.* v. *United States,* 12 Ct. Cust. Appls. 48, T. D. 39997, and cases therein cited.

Defendant, arguing to support the collector's action in classifying these self-adhesive tapes, urges that the cost of the "petroleum ether" should not be considered in determining the component material of chief value because, as stated in counsel's brief, "there is no petroleum spirit in the imported merchandise (R. 38), and in fact, the petroleum spirit must be eliminated before the merchandise may serve its purpose as pressure-sensitive adhesive tape (R. 37, 39)." To give, favorable consideration to such a proposition is to say that each of the various ingredients used in preparing the "adhesive mass" is a "component material" of the imported article. Such reasoning is untenable.

In applying herein the rule for determining the "component material of chief value," recognition must be given to the positive distinction between the words "component" and "ingredient." The word "component" is defined in Funk & Wagnalls New Standard Dictionary as "a constituent element or part." The same authority defines the word "ingredient" as "that which is placed in or specifically enters into the constitution of any mixture or compound, or is a component part of any conglomerate * * *." It follows therefrom, with respect to the merchandise under consideration, that the component materials of these self-adhesive tapes are the "adhesive mass" and the "cellophane." Petroleum spirit, or "petroleum ether," is one of the ingredients that was present in the "adhesive mass" at the time the component materials were "ready to be assembled or combined into the completed article," *Rice-Stix Dry Goods Co.* case, *supra.* Its cost is attributable to the "adhesive mass," as such, but cannot be regarded as related to an individual component in determining the "component material of chief value." In other words, the isolated cost of an ingredient in the conglomerate, i. e., the "adhesive mass," is not a factor in determining the component material of chief value in the finished self-adhesive tapes. Consistent with this reasoning and on the basis of plaintiffs' uncontradicted evidence, as hereinabove outlined, we find that the self-adhesive tapes in question are not "made in chief value from transparent sheets," paragraph 31 (b) (2), as modified, *supra,* as classified by the collector, and that the component material of chief value in these articles is the "adhesive mass." The collector's classification of the merchandise is accordingly overruled.

Plaintiffs' primary claim is that the self-adhesive tapes in question are properly classifiable, by similitude, as "gummed papers, not specially provided for," under paragraph 1405 of the Tariff Act of 1930, as modified by T. D. 52739, by virtue of the similitude clause in para-

graph 1559 of the Tariff Act of 1930, which, so far as pertinent, reads as follows:

PAR. 1559. That each and every imported article, not enumerated in this Act, which is similar, either in material, quality, texture, or the use to which it may be applied to any article enumerated in this Act as chargeable with duty, shall be subject to the same rate of duty which is levied on the enumerated article which it most resembles in any of the particulars before mentioned; * * *.

"To bring an article within the scope of the similitude clause, it is sufficient if there exists a substantial similitude in any one of the particulars mentioned," namely, material, quality, texture, or use. *Hartmann Trunk Co.* v. *United States*, 27 C. C. P. A. (Customs) 254, C. A. D. 95. In urging classification by similitude, counsel, in his brief, states that "plaintiffs make no claim for the similarity in quality or texture of the imported tapes and gummed paper." Plaintiffs' claim for classification by similitude of material is set forth in counsel's brief as follows:

It is common knowledge that gummed paper is coated with an adhesive which facilitates its use. The evidence herein shows that the merchandise at bar is also coated with an adhesive for the same purpose. It is also common knowledge that paper is made, at least in part, from wood and that cellulose is a major constituent of wood. The evidence herein shows that the cellophane portion of the imported merchandise involved is made from a cellulose compound. It becomes obvious that the materials of gummed paper and of the merchandise here under consideration are similar to an extent which makes applicable the similitude provision of the Act in classifying the imported tapes.

The contentions embodied in the foregoing quotation are not supported by record evidence sufficient to supply a factual foundation in support of the claim. Plaintiffs' evidence contains nothing concerning the components of gummed paper. On the basis of the present record, the claim for classification by similitude of material must be, and hereby is, overruled.

To support the claim for classification by similitude of use, plaintiffs point to the uncontradicted testimony showing that the imported self-adhesive tapes and gummed papers provided for in the law are used "for sealing packages, holding, and securing." Such a general use of the two comparable products is not sufficient for classification by similitude. To satisfy the statute, paragraph 1559, *supra*, there must be a substantial sameness in the method of use and the effect, or the productive result, of the imported product and the one specifically provided for in the law. *Pickhardt* v. *Merritt*, 132 U. S. 252. The vital distinction between these self-adhesive tapes and gummed papers concerns a peculiar characteristic of each. Gummed papers are opaque; self-adhesive tapes are transparent. The distinction makes the comparable products susceptible of producing materially different results when applied to the same general use. In this con-

nection, reference is had to the prominent use of holding and securing printed matter that has value as reading material. Opaque gummed papers are useless for such purpose; transparent self-adhesive tapes must be employed. This difference in use between the two commodities is a substantial one and is sufficient to deny planitiffs' claim for classification of the merchandise in question by similitude of use with gummed papers. *Murphy* v. *Arnson*, 96 U. S. 131; *Corporacion Argentina de Productores de Carnes* v. *United States*, 29 C. C. P. A. (Customs) 288, C. A. D. 204.

Plaintiffs' claim for classification as manufactures of rubber under paragraph 1537 (b), *supra*, by virtue of the mixed materials clause in paragraph 1559, is without merit. The basis for the claim is the quantity of pale crepe rubber used in the preparation of the "adhesive mass." The pale crepe rubber so used is merely an ingredient of the "adhesive mass"; it is not a "component material" of the imported tapes. The reasons, as hereinabove developed, for rejecting defendant's claim concerning the "petroleum ether," used in the "adhesive mass," have equal application, with the same force and effect, with respect to plaintiffs' claim for classification as manufactures of rubber, not specially provided for.

Defendant argues very strongly for the application of what is known as the "preexisting material" doctrine, which has been invoked in cases where the issue turned on a determination of the independent existence of certain source material before the manufacture of the finished product. *Cohn & Lewis* v. *United States*, 25 C. C. P. A. (Customs) 220, T. D. 49335; *United States* v. *Accurate Millinery Co. et al.*, 42 C. C. P. A. (Customs) 229, C. A. D. 599. In this case, the primary question is the matter of the component material of chief value. On the record before us, as hereinabove analyzed, the component materials of the imported tapes are the "adhesive" and the "cellophane," and each had a separate existence before their combination into the imported product. That the adhesive properties of the finished tapes were acquired after combination of the component materials is immaterial in determining the component material of chief value. Of primary importance is that, at the time the "adhesive mass" and the "cellophane" were "ready to be assembled or combined into the completed article," *Rice-Stix Dry Goods Co.* case, *supra*, the costs to the manufacturer included all the ingredients contained in both of the component materials. The situation herein suggests nothing to apply the doctrine of "preexisting material."

Our conclusions that the merchandise in question is not "made in chief value from transparent sheets" and that the component material of chief value is the "adhesive mass" removes from further consideration paragraph 31 (b) (either as originally enacted or as modified,

*supra*), which is confined, so far as our consideration herein is concerned, to finished articles, of which a compound of cellulose is the component material of chief value. Since these self-adhesive tapes are manufactured articles that are not specifically provided for, nor classifiable, by similitude, to any article provided for in the law, nor classifiable, by virtue of the mixed materials clause, as hereinabove set forth, they are, therefore, properly relegated for classification under the residuary provision for nonenumerated manufactured articles in paragraph 1558, *supra*, and dutiable thereunder at the rate of 20 per centum ad valorem, as claimed by plaintiffs.

That claim in the protests is sustained and judgment will be rendered accordingly.