(C. D. 1933)

SWISS MANUFACTURES ASSOCIATION, INC. ROHNER, GEHRIG & CO., INC., ET AL. } *v.* UNITED STATES

United States Customs Court, First Division

(Decided November 7, 1957)

*Barnes, Richardson & Colburn* (*Edward N. Glad* of counsel) for the plaintiffs.

*George Cochran Doub*, Assistant Attorney General (*Murray Sklaroff*, trial attorney), for the defendant.

Before OLIVER, MOLLISON, and WILSON, Judges; OLIVER, C. J., concurring

MOLLISON, Judge: The merchandise the subject of these protests, which were consolidated for purposes of trial, consists of so-called diamond grinding wheels or diamond tools. They were assessed with duty at the rate of 25 cents per pound and 20 per centum ad valorem under the provision in paragraph 1539 (b) of the Tariff Act of 1930, as modified by the Presidential proclamation relating to the Torquay Protocol to the General Agreement on Tariffs and Trade, T. D. 52739, for—

Manufactures wholly or in chief value of any product of which any synthetic resin or resin-like substance is the chief binding agent * * *.

They are claimed to be properly dutiable at the rate of 10 per centum ad valorem under the provision in paragraph 1558 of the same act, as modified by the said proclamation and supplemented by the Presidential notification reported in T. D. 52827, for—

Articles manufactured, in whole or in part, not specially provided for * * *,

or, alternatively, at the rate of 15 per centum ad valorem under the provision in paragraph 214 of the said act, as modified by the Presidential proclamation relating to the General Agreement on Tariffs and Trade, T. D. 51802, for—

* * * articles * * * composed wholly or in chief value of earthy or mineral substances, not specially provided for * * * not decorated in any manner * * *.

At the trial, it was stipulated by counsel for the parties that the merchandise, described either on the consular or commercial invoices as diamond wheels, diamond grinding wheels, or diamond tools, is similar in all material respects to the diamond grinding wheels involved in protest 217908–K, *Rohner, Gehrig & Co., Inc., and Swiss Manufactures Association, Inc.* v. *United States*, the decision in which case is reported in 37 Cust. Ct. 391, Abstract 60279. The record in that

case was incorporated as part of the record in this case, and the present protests were submitted for decision, time being requested and allowed for the filing of briefs.

The record on which the issue is to be decided consists of an oral stipulation entered into between counsel—

1. That the merchandise consists of diamond powder, bound together by Bakelite to form a ring and mounted on a disk body, the synthetic resin in the Bakelite being the chief binding agent.

2. That these wheels are manufactured by mixing Bakelite powder, purchased from the manufacturer thereof, together with diamond powder in the desired proportions, the ratio depending upon the concentration ordered. This mixture is then pressed hot in a mold, producing a grinding ring.

3. That the ring is fastened to a suitable disk body, being of aluminum, or, in the case of smaller wheels, of Bakelite, thus producing the diamond grinding wheels.

4. That the price of the diamond grinding wheels is determined practically exclusively by the amount of diamond powder which is used in each wheel. The ratio of the cost of the diamond powder to the other materials, to wit, the Bakelite, the aluminum disk, and manufacturing expenses, is 4 to 1. Therefore, the component material in chief value in these grinding wheels is the diamond powder.

5. That the synthetic resin is the chief and only binding agent.

In the brief filed on behalf of the Government in the incorporated case, it was conceded that the protest there involved should be sustained.

In the course of our decision in the incorporated case, we observed that—

* * * both parties adopt the view that the *product* referred to in the statute is that *single product* or component material used in the manufacture which contains as its chief binding agent the synthetic resin or resin-like substance. In such view, the diamond grinding wheels at bar are manufactures of the following products: (1) Diamond powder, (2) Bakelite powder, and (3) aluminum, and, in such view, of course, the single product which has a synthetic resin or resin-like substance as its chief binding agent is the Bakelite powder. Inasmuch as it is stipulated that the diamond powder is the component material of chief value, it follows that the Bakelite powder is not. [Italics quoted.]

After the promulgation of the decision in the incorporated case, which was based upon reasoning in which the Government had concurred, it obviously had a change of view of the matter, and, in T. D. 54279, reported in the advance sheets of Treasury Decisions of January 10, 1957, volume 92, No. 2, the Commissioner of Customs limited the application of that decision, so far as the actions of collectors and other customs personnel were concerned, to the importation covered thereby. The reasons for such action on the part of the Commissioner are, in part, similar to the theory of the case now

advanced by counsel for the Government in the brief filed in its behalf, as follows:

* * * that the imported articles consist of the combination of *two* articles, one being the grinding ring, the other being the disc body, as set forth in the stipulation therein. It is, therefore, the grinding ring, composed of diamond dust and Bakelite, which is a product of which synthetic resin is the chief binding agent. Since, obviously, this product is the component material in chief value of the imported grinding wheels, the classification was correct. [Italics quoted.]

In his critique of the decision in the incorporated case, the Commissioner of Customs said the court "did not discuss two considerations of direct interest to the classification of the grinding wheels," one being that the wheels consist of two "components," and the other that, in any event, the provision in paragraph 214, as modified, for articles composed in chief value of earthy or mineral substances would be more specifically applicable to the diamond grinding wheels than the nonenumerated manufactured articles provision in paragraph 1558, as modified, under which the merchandise was held to be classifiable by the court in its decision.

In view of the foregoing, we think it pertinent to note that neither party, either at the trial or in the briefs filed in the earlier case, made any effort to offer the "two considerations of direct interest to the classification" to the court for discussion, and its decision was limited to a disposition of the issue as framed by the parties.

However, these two considerations are now before us, and we will proceed to discuss them. The tariff term with which we are concerned is "product"—we are to determine whether or not the grinding wheels are "manufactures * * * in chief value of any *product* of which any synthetic resin or resin-like substance is the chief binding agent" [italics added].

The case of *United States* v. *J. E. Bernard & Co., Inc.*, 42 C. C. P. A. (Customs) 69, C. A. D. 573, is the latest case in which our appellate court considered the provision for "Manufactures wholly or in chief value of any product of which any synthetic resin or resin-like substance is the chief binding agent." In that case, the imported merchandise consisted of washing machine agitators, composed wholly of Bakelite. The agitators had been imported in the finished, molded state, which had been accomplished by subjecting an unactivated Bakelite molding compound, consisting of cotton linters as a filler and synthetic resin as the binding agent, to heat and pressure in a mold.

In this court it had been urged by the plaintiff that, under the rule of statutory construction adhered to in this and our appellate court and in the absence of a manifest contrary legislative intent, a tariff term for "manufactures wholly or in chief value of" a given substance or material presupposed the prior existence of that substance or material before the manufactured article came into existence. On

the ground that the Bakelite had no existence in any form in which synthetic resin then bound anything together prior to being molded into agitators under heat and pressure, this court applied the pre-existence rule of construction and held that the imported agitators were not manufactures wholly or in chief value of any product of which synthetic resin was the chief binding agent. *J. E. Bernard & Company, Inc.* v. *United States*, 32 Cust. Ct. 72, C. D. 1582.

On appeal, taken by the Government, the decision of this court was reversed. One of the bases of the appeal was that the doctrine of "pre-existing material" is merely one of statutory construction which must yield to a contrary legislative intent, but our appellate court squarely held that—

* * * The question presented is * * * purely one of statutory construction based upon the undisputed facts established by the record.

The court affirmed the applicability of the "pre-existing material" doctrine, but held, however, that this court—

* * * erroneously reached the conclusion that there existed no independent product of which synthetic resin was the chief binding agent prior to the formation of the agitators by the application of heat and pressure to the molds in which the imported merchandise was molded and produced * * *

inasmuch as the Bakelite "constituted an unactivated molding compound * * * of which synthetic resin was the chief binding agent." The court held that the terms of the provisions of paragraph 1539 (b) were plain and unambiguous and that, consequently, there was little or no room for resorting to the legislative history of the enactment. It noted, however, that the legislative history supported the view it had reached by way of statutory construction, and the application of the "pre-existing material" doctrine, that the provision covered a mixture containing synthetic resin and a filler, in unactivated form.

It is tacitly admitted by the Government in this case that under that authority the manufactures at bar (the grinding wheels) are composed of three products, i. e., the Bakelite or aluminum disks, the diamond powder, and the Bakelite powder, the latter being a product of which synthetic resin is the chief binding agent.

But, the Government contends, the grinding ring, consisting of the Bakelite powder and the diamond powder *after* being mixed together and molded under heat and pressure, is *also* a "product" of which synthetic resin is the chief binding agent and urges that that is the product which should control the classification of the merchandise.

The term "product" is one of broad meaning. Webster's New International Dictionary, 2d edition, 1945, defines it as—

Anything produced, as by generation, growth, labor, or thought, or by the operation of involuntary causes * * *.

and it has been so judicially defined. *Brown* v. *Cummins Distilleries Corporation et al.*, 53 F. Supp. 659, 664.

In the discussion in the briefs filed by counsel in the earlier case and in the opinion of this court therein, the term "product" was treated as though it were synonymous with the term "component material of chief value." The term is treated in the same manner in the briefs filed by counsel for both parties herein, except that we observe that in its discussion of the present case the Government uses the terms "product," "article," "component material," and "component" as all meaning the same thing.

While all of the terms referred to are of rather broad import, nevertheless, we think that the last two have somewhat different meanings. The following may serve to illustrate this: An engine would be a component of an automobile, but it would hardly be referred as a component *material*. A component material of an automobile would refer to more primary or basic things, such as steel, rubber, etc.

As has been said, however, in the briefs filed on behalf of the parties, both seem to take the position that the issue is controlled by the determination of the component material of chief value of the diamond grinding wheels. In other words, it is considered that the provision, which actually reads "Manufactures wholly or in chief value of any product of which any synthetic resin or resin-like substance is the chief binding agent," may be read as "Manufactures wholly or in chief value of any component material of which any synthetic resin or resin-like substance is the chief binding agent."

The rules for the determination of the component material of chief value of any article or manufacture enumerated in the tariff act are generally well settled, and, indeed, some are written into the statute itself, as will be seen from the following excerpt from paragraph 1559 of the Tariff Act of 1930:

* * * and the words "component material of chief value," wherever used in this Act, shall be held to mean that component material which shall exceed in value any other single component material of the article; and the value of each component material shall be determined by the ascertained value of such material in its condition as found in the article. * * *

Although it would seem from the wording of the statute that the foregoing definition and method of determining value are limited to those situations wherein the actual words "component material of chief value" are used in a tariff provision, nevertheless, the definition has been consistently applied wherever the component material of chief value must be determined, regardless of whether the quoted words appear in the provision in question. *Seeberger* v. *Hardy*, 150 U. S. 420, 37 Law. Ed. 1129; *Turner & Co. et al.* v. *United States*, 12 Ct. Cust. Appls. 48, T. D. 39997; and *United States* v. *Mrs. S. Bacharach*, 18 C. C. P. A. (Customs) 353, T. D. 44612.

Moreover, the words "and the value of each component material shall be determined by the ascertained value of such material in its

condition as found in the article" have been held to mean the value of such material in the state in which it is originally put into the article, i. e., at the time when nothing further remains to be done to it as a material and it is ready to be combined or joined with other materials in the manufacture of the article. *Seeberger* v. *Hardy*, *supra*; *United States* v. *Johnson & Johnson*, 154 Fed. 39; *United States* v. *Bernard, Judae & Co.*, 15 Ct. Cust. Appls. 172, T. D. 42231.

It is, of course, to be noted that the statute limits the definition to "that component material which shall exceed in value any other *single* component material of the article" [italics added]. This limitation had been rigidly adhered to and it has been held that the only deviations permitted are those instances where Congress has *expressly* prescribed exceptions to the rule by providing that two or more component materials may be considered together. *Chin & Co.* v. *United States*, 11 Ct. Cust. Appls. 124, T. D. 38932, and *Steinhardt & Bro.* v. *United States*, 8 Ct. Cust. Appls. 372, T. D. 37629.

What we have before us, therefore, is an article manufactured with the use of three single component materials, to wit, diamond powder, Bakelite powder, and Bakelite or aluminum disks. Each *material* had been processed from its original state up to the point where, as a *material*, it was to be combined with the others to form the manufactured article, that is to say, the original diamonds had been made into a powder; the synthetic resin and cotton linters, of which the Bakelite molding compound was made, had been brought together in the proper proportions; and the Bakelite or aluminum disks had been brought by what obviously must have been manufacturing processes to the state in which they would lose their identity as Bakelite and aluminum materials and enter into the manufacture of the article.

What must be kept in mind is the distinction between manufacturing operations which advance the materials *as materials* and manufacturing operations which convert the materials into the complete articles. The law is well settled that the costs entering into bringing the materials to the state where they are ready to be united with the other materials in the manufacture of the article are attributable to the *materials* and are to be considered in the determination of component material of chief value, but the costs entering into the uniting of the materials to make the finished article are not to be considered in the determination of component material of chief value. *Turner & Co. et al.* v. *United States*, 12 Ct. Cust. Appls. 48, T. D. 39997; *C. H. Powell Co. et al.* v. *United States*, 64 Treas. Dec. 467, T. D. 46711.

The manufacturing operations which united or combined the three *materials* in the case at bar and resulted in the completed *article* were performed in two stages: (1) The mixture of the Bakelite and diamond powders and their joining under heat and pressure to form the grinding ring, and (2) the joining of the grinding ring to the Bakelite or aluminum disks to form the complete wheel. We therefore have an article

composed of three single or separate materials, joined together in a two-stage manufacturing operation.

We are of the opinion that, in such a case, the values of the single or separate component materials must be taken as of the time each one is ready to be united with the other materials in the manufacture of the article. So construed, the component material of chief value of the diamond grinding wheels at bar is the diamond powder. The combining of the Bakelite powder with the diamond powder was an operation attributable to the manufacture of the wheels, and not of either component material.

Counsel for the defendant has cited the case of *Vandergrift Forwarding Co.* and *Lasso Tapes, Inc.* v. *United States*, 37 Cust. Ct. 18, C. D. 1793, as achieving a result contrary to the foregoing. That case involved the classification of self-adhesive tape, which the defendant contended was properly assessable with duty under the provision in paragraph 31 (b) (2) of the Tariff Act of 1930, as modified, for—

Finished * * * articles, not specially provided for, made in chief value from transparent sheets, bands, or strips * * * [of compounds of cellulose].

Various claims were made in the protest, but decision in the case ultimately hinged upon the question of whether the tape was made in chief value of transparent strips of cellophane, a compound of cellulose, or whether it was made in chief value of some other material.

The evidence showed that the tapes were made by applying to the cellophane a so-called "adhesive mass," which was made of rubber, resin, and tackifiers, all dissolved in petroleum spirit. At the time of joining the cellophane to the adhesive mass, the latter contained petroleum spirit, but, afterwards, in the course of manufacture of the ultimate tapes, the petroleum spirit dissolved and was not present at all in the finished tapes.

The evidence further showed that if the cost of the petroleum spirit were included in the cost of the adhesive mass the latter was in chief value, but if the cost of the petroleum spirit were not included in the cost of the adhesive mass, the cellophane was in chief value.

The defendant contended, in that case, that the adhesive mass was *not* a component material of the tapes, but that the component materials were the cellophane and the individual ingredients (rubber, resin, and tackifiers) which were used in the making of the adhesive mass, or, alternatively, if the adhesive mass be considered to be a component material, that the cost of the petroleum spirit was not to be considered to be a part of the cost of the adhesive mass.

In reaching the conclusion that the adhesive mass was a "component material," the value of which was to be compared with the value of the other component material cellophane, this court said:

In applying herein the rule for determining the "component material of chief value," recognition must be given to the positive distinction between the words "component" and "ingredient." The word "component" is defined in Funk &

Wagnalls New Standard Dictionary as "a constituent element or part." The same authority defines the word "ingredient" as "that which is placed in or specifically enters into the constitution of any mixture or compound, or is a component part of any conglomerate * * *." It follows therefrom, with respect to the merchandise under consideration, that the component materials of these self-adhesive tapes are the "adhesive mass" and the "cellophane." * * *

It is to be noted that the word which received emphasis in the foregoing was "component," which, in the statutory phrase involved, actually was an adjective, modifying the noun "material." The distinction between a "component" and a "material" is rather difficult to discern from the dictionary definitions, in which they overlap and seemingly find a common meaning in the sense of "part." However, the distinction in a tariff sense is quite readily apparent from a study of the decided cases, such as *Field & Co.* v. *United States*, 7 Ct. Cust. Appls. 332, T. D. 36876, cited by counsel for the plaintiffs in the brief filed in their behalf.

The merchandise involved was a cloth which had been woven with a warp yarn of wool and a weft yarn of mixed wool and Angora goat hair. The tariff competition was between two provisions, one for cloth in chief value of wool, and the other for cloth in chief value of Angora goat hair. The two *parts* or *components* of the cloth, therefore, were the *warp yarn* and the *weft yarn*. The values of the two parts were such that, if each *yarn* were to be considered as a component material, the weft yarn, composed of Angora goat hair and wool, would be in chief value, but if the *materials* in the two yarns, wool and Angora goat hair, were to be compared, the wool would be in chief value.

Our appellate court held that the component materials of the cloth were the wool and Angora goat hair, and that the value of the wool in the warp yarn should be added to the value of the wool in the weft yarn and the total compared to the value of the Angora goat hair in the weft yarn.

It follows, therefore, that the component materials of an article or manufacture are the primary things or substances of which it is made. As has been pointed out, at the point at which their values are to be determined, i. e., the point at which they enter the manufacture of the article, as distinguished from the processes applied to the materials to bring them to that point, they may be much advanced over their original raw condition.

However, in making an article or manufacture dutiable according to its component material of chief value, Congress may name a material which is itself a manufacture, as it did in the case of needlecases or needlebooks, furnished with assortments of needles or combinations of needles and other articles, which, in paragraph 164 of the Tariff Act of 1909, were required to "pay duty as entireties according to the component material of chief value therein." In *Steinhardt & Bro.* v.

*United States*, 2 Ct. Cust. Appls. 361, T. D. 32092, it was held that such a provision constituted a departure from the ordinary rule with respect to the ascertainment of component material of chief value and required a comparison of the values of the *components* of the *entirety*, i. e., the needles and the cases, rather than the *materials*, metal and paper.

The point to be observed is that the court emphasized that such a case constituted an exception to the statutory rule confining, as the court said—

\* \* \* "component material of chief value" to each *single* component *material.* [Italics quoted.]

and the reasoning and conclusion of the case, the court said, were not to be carried beyond the language employed by the Congress.

Also considered as exceptions to the rule that the "component material of chief value" is limited to the single component material which exceeds in value any other single component material are those instances where Congress has expressly prescribed that, in the determination of a particular question of chief value, the combined values of two or more single component materials must be treated as one. Such instances were to be found in paragraphs 262 and 319 of the Tariff Act of 1913, relating to a component material of chief value of "cotton or vegetable fiber *and* india rubber" and of "artificial or imitation silk \* \* \* *and* india rubber," respectively. [Italics in each quotation added.] See *Steinhardt & Bro.* v. *United States*, 8 Ct. Cust. Appls. 372, T. D. 37629.

Again, it should be observed that such instances were denominated by our appellate court as exceptions to the general rule with respect to single component materials.

It therefore may be said that the single component material rule must be adhered to, except in those instances where Congress has expressly prescribed an exception thereto. The question which follows, then, is whether, by the use of the language "Manufactures wholly or in chief value of any product of which any synthetic resin or resin-like substance is the chief binding agent" in paragraph 1539 (b), *supra*, Congress manifested an intent to make an exception to the single component material rule.

It is, in effect, the Government's contention that Congress did intend to make an exception to the single component material rule and that, by the use of the term "any product of which any synthetic resin or resin-like substance is the chief binding agent," Congress intended the words "any product" to embrace both (1) the molding compound itself in its unactivated state (as was held in the *Bernard* case, *supra*) and (2) the molding compound *and* any other substance or material united with it by the activation of the molding compound.

However, if the term "any product" were held to embrace products

formed as described in (2), above, i. e., by the mixing of a molding compound containing synthetic resin or a resinlike substance as its chief binding agent with any other substance or material and activating the synthetic resin of the molding compound, it would follow that the provision in paragraph 1539 (b), here involved, would invade and take precedence over every other provision of the tariff act relating to the substances or materials which might be used in conjunction with such molding compounds, and which other provisions of the tariff act would otherwise apply. In other words, it would first have to be held that it was the intent of Congress that the doctrine of "invasion" should apply in the case of products so formed.

But that doctrine has never been applied except in cases where the language of the invading provision "is so sweeping, clear, and definite as to the goods subjected to its operation that there is no room for interpretation and no doubt left as to the goods which Congress meant to include" (*Kayser & Co. (Inc.)* v. *United States*, 13 Ct. Cust. Appls. 474, T. D. 41367). And, in such cases, Congress has made its intention clear by means of appropriate language, such as "whether or not more specifically provided for elsewhere," or "by whatever name known, and to whatever use applied, and whether or not named, described, or provided for elsewhere in this Act" (*United States* v. *Finchley, Inc.*, 27 C. C. P. A. (Customs) 58, 61, 63, C. A. D. 63, and *United States.* v. *C. I. Penn*, 27 id. 242, 247, C. A. D. 93).

There are no words of any such import in the provision here in question, and we do not think that such an intention was evidenced by Congress in its choice of language. Moreover, we are of the opinion that Congress intended the provision to apply only to any manufacture made wholly or in chief value of those articles of commerce known as molding compounds having as their chief binding agents any synthetic resin or resinlike substance.

We think the decision of our appellate court in the *Bernard* case, *supra*, further supports that conclusion. In the *Bernard* case, it was held that the preexisting material doctrine was applicable to the provision in question and that the preexisting material in the agitators there involved was the article of commerce, known as Bakelite, an unactivated molding compound. As corroborative of the conclusion it reached, the court cited certain legislative history as showing that such unactivated molding compounds constituted the nature of the products intended to be covered by the provision. The said legislative history consisted of an excerpt from the report of the Finance Committee of the United States Senate, made at the time the bill which ultimately became the Tariff Act of 1930 was under consideration by that body. The excerpt reads as follows:

The phrase "or of any other product of which any synthetic resin or resinlike substance is the chief binding agent," has been inserted in order to make specific

provision for an important group of products known as molded products. These are made by molding under heat or heat and pressure *a mixture containing synthetic resin or a resinlike substance and a filler, such as wood flour and pigments.* (Calendar No. 42, 71st Congress, 1st Session, Senate Report No. 37, p. 52.) [Italics added.]

From a consideration of the italicized words, it would seem that the manufactures Congress had in mind to make dutiable under the provision were those which would be made wholly or in chief value of "a mixture containing synthetic resin or a resinlike substance and a filler, such as wood flour and pigments." There seems to be no question but that the Bakelite powder here involved contained synthetic resin and a filler, which, although not identified in the stipulation, is said in defendant's brief to be cotton linters. The diamond powder was not a "filler" of the molding compound, but a substance added to it in the course of manufacture of the articles at bar, and the combination of the molding compound and diamond powder, after activation of the former, is not such a "product" as is contemplated by paragraph 1539 (b), *supra.*

The only matter left for consideration is whether the merchandise at bar, having been demonstrated not to be within the purview of paragraph 1539 (b), *supra*, finds correct classification under the provision in paragraph 214 of the tariff act, as modified, *supra*, as articles, composed in chief value of earthy or mineral substances, not specially provided for, not decorated in any manner, as alternatively contended by the defendant, or under the catchall provision in paragraph 1558 of the said act as nonenumerated manufactured articles.

Counsel for the plaintiffs concedes the correctness of classification under the former provision, and the protests at bar contain such a claim. Inasmuch as there seems to be no question but that the provisions of paragraph 214, *supra*, constitute an enumeration, in a tariff sense, of a manufacture in chief value of diamond powder, that claim in each protest is sustained.

Judgment will issue accordingly.

### CONCURRING OPINION

OLIVER, Chief Judge: I concur in the conclusion reached by my learned colleagues. In doing so, I rely entirely upon the decision in *United States* v. *J. E. Bernard & Co., Inc.,* 42 C. C. P. A. (Customs) 69, C. A. D. 573, as it construed the provision in paragraph 1539 (b) of the Tariff Act of 1930, as modified, for "Manufactures wholly or in chief value of any product of which any synthetic resin or resinlike substance is the chief binding agent, * * *." It is my opinion that the clear and unambiguous language of that provision, and the judicial interpretation thereof in the cited case, make no place for

discussion herein of the principles relating to the statutory words "component material of chief value" (paragraph 1559 of the Tariff Act of 1930).

In presenting my views on the issue involved herein, I borrow from the majority opinion wherein it states:

> It is tacitly admitted by the Government in this case that under that authority [the *J. E. Bernard & Co., Inc.*, case, *supra*] the manufactures at bar (the grinding wheels) are composed of three products, i. e., the Bakelite or aluminum disks, the diamond powder, and the Bakelite powder, the latter being a product of which synthetic resin is the chief binding agent.

In the *J. E. Bernard & Co., Inc.*, case, *supra*, the merchandise consisted of electric washing machine agitators, composed of Bakelite, which were classified under the provision, hereinabove quoted, in paragraph 1539 (b), as modified. The Court of Customs and Patent Appeals, in the cited case, found that Bakelite is "an unactivated molding compound or article of commerce" of which synthetic resin is the chief binding agent; that it is bought and sold in convenient form which permits its utilization in the molding of a multitude of plastic articles; and that it existed as an independent product prior to the formation of the agitators, or the "manufactures," there under consideration. Invoking the well-established doctrine that the language of the statute "manufactures of" presupposes that the substance or the product—or, as in this case, the products—of which the imported manufactured article is made "exists before the article itself comes into existence," the appellate court, in the *J. E. Bernard & Co., Inc.*, case, *supra*, held the merchandise involved therein to be properly dutiable under paragraph 1539 (b), as modified, *supra*, as it had been classified. While the decision in that case stated that "The terms of the provisions of paragraph 1539 (b) appear to be plain and unambiguous," the court, "in order to verify its position and demonstrate that there is no ambiguity in the language of the enactment," quoted excerpts from the Report of the Finance Committee of the United States Senate (Calendar No. 42, 71st Congress, 1st Session, Senate Report No. 37, page 52, under the heading "Paragraph 1539 (b)—Synthetic Resin") as follows:

> The phrase "or of any other product of which any synthetic resin or resinlike substance is the chief binding agent," has been inserted in order to make specific provision for an important group of products known as molded products. These are made by molding under heat or heat and pressure a mixture containing synthetic resin or a resinlike substance and a filler, such as wood flour and pigments.
>
> Molded products included in this provision cover a wide range and are used chiefly in electrical or mechanical machinery where requirements of electrical insulation properties, mechanical strength, exactness of form or size, and resistance to destructive agents, render them of peculiar importance. These molded products find a multitude of uses.

Under the agreed set of facts upon which this case was submitted and in line with the decision in the *J. E. Bernard & Co., Inc.*, case, *supra*, the "product" of which synthetic resin is the "chief and only binding agent" in the "manufactures," i. e., the grinding wheels, under consideration, is Bakelite powder. Since it is conceded that the diamond powder is in chief value in these grinding wheels, it, therefore, follows that they are excluded from the provision in paragraph 1539 (b), as modified, *supra*, as classified by the collector.

There being no dispute that diamond powder is an earthy or a mineral substance, the grinding wheels in question are properly classifiable under the provision in paragraph 214 of the Tariff Act of 1930, as modified by T. D. 51802, for articles, composed in chief value of earthy or mineral substances, not specially provided for, not decorated in any manner, and dutiable thereunder at the rate of 15 per centum ad valorem, as claimed by plaintiffs.