**PILLOWTEX CORPORATION, Plaintiff,**

**v.**

**UNITED STATES, Defendant.**

**Slip Op. 97–146.**
**Court No. 94–09–00568.**

United States Court of International Trade.

Oct. 28, 1997.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

WALLACH, Judge.

Pillowtex Corporation ("Pillowtex") is an importer of comforters and similar bedding into the United States. In this action, Pillowtex contends that comforters it imported into the United States, which comprise an outer shell made of cotton stuffed with down, should be classified under the Harmonized Tariff System of the United States ("HTSUS") subheading 9404.90.80, which provides for duty at a rate of 5% *ad valorem.* The United States Customs Service ("Customs") classified the goods under HTSUS 9404.90.90, which provides for duty at a rate of 14.5% *ad valorem.*

Motions for summary judgment brought by both Plaintiff and Defendant were denied. A bench trial followed. These are the Findings of Fact and Conclusions of Law rendered by the Court in arriving at final judgment for Defendant, United States.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

1. Pillowtex imported the subject goods into the United States from the People's Republic of China in entry number 336–2905829–9, through the port of San Francisco.

2. The subject goods consist of comforters constructed with an outer shell made entirely of woven cotton, without any embroidery, lace, braid, edging, trimming or piping exceeding 6.15 mm., or applique work. The shell contains baffling, comprising small pieces of fabric sewn between the top and bottom panels of the shell designed to prevent the down stuffing from migrating within the shell, thus ensuring even coverage with down of the full area of the comforter.

3. The cotton outer shell of the subject goods is stuffed solely with white duck down, weighing approximately 18 ounces.

4. Comforters are, *inter alia,* manufactured with stuffing made of cotton batting. Cotton batting is not necessarily the ideal stuffing for a comforter for several reasons: it retains moisture; it loses its insulating quality when wet; it is subject to mildew growth; and, when washed, its tendency to retain moisture makes it take on weight which will burn out the motors of washing machines and driers.

5. Most comforters sold in the United States are made with a stuffing of either down or polyester fill.

6. Eiderdowns are comforters that are stuffed with a particular type of down, *viz.,* the down of the eider duck. Eider duck down has superior insulating and lofting qualities and, generally, is more expensive than other kinds of down.

7. The subject merchandise is stuffed with white duck down, which is distinct from the down of the eider duck. Therefore, the merchandise is not an "eiderdown".

8. The merchandise constitutes an article of bedding whose utility is as a bed covering that has high insulating quali-

ties, retaining the heat of a sleeping person and keeping that person warm without overheating while wicking moisture away and dispersing it. The product's down stuffing retains its insulating quality after it has become moist. Consumers purchase comforters stuffed with down primarily for these characteristics.

9. The essential character of the subject merchandise are found in its ability to insulate and wick moisture away from a sleeping person while maintaining a comfortable temperature. These characteristics are best imparted by the down filling.

10. In common and commercial usage, the phrases "comforter of cotton" and "cotton comforter" describe comforters that are stuffed with cotton.

11. Testimony before the Court established beyond doubt that the term "of cotton" when used to describe a comforter does not include in common or commercial parlance a down-filled comforter as such. It may on occasion be used when describing a down comforter's outer shell.

12. In common and commercial usage, the phrases "comforter of down" and "down comforter" describe comforters that are stuffed with down.

13. Customs liquidated the entry of the subject merchandise under HTSUS 9404.90.90.

14. Pillowtex filed a protest timely, which sought liquidation under HTSUS 9404.90.80. Customs denied the protest.

15. The subject merchandise, a comforter, is described by heading 9404 of HTSUS:

9404 Mattress supports; articles of bedding and similar furnishing (for example, mattresses, quilts, eiderdowns, cushions, pouffes and pillows) fitted with springs or stuffed or internally fitted with any material or of cellular rubber or plastics, whether or not covered:

\* \* \*

9404.90.80 Other:

Of cotton, not containing any embroidery, lace, braid, edging, trimming, piping exceeding 6.35 mm or applique work . . . . . . . . . 5%

9404.90.90 Other . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14.5%

Quilts, eiderdowns, comforters and similar articles.[1]

16. Plaintiff's proposed classification, HTSUS 9404.90.80, is a basket provision that includes, *inter alia*, comforters "of cotton, not containing any embroidery, lace, braid, edging, trimming, piping exceeding 6.5 mm. or applique work." HTSUS 9404.90.80. The parties agree that the dispositive issue before the Court is whether the comforters are "of cotton" as the term is commonly used in the United States. *See* Pretrial Order Schedule F–1: Plaintiff's Statement Of The Issues In This Case; Pretrial Order Schedule F–2, Defendant's Statement of the Issue of the This Case.

17. " '[T]he meaning of a tariff term is presumed to be the same as its common or dictionary meaning.' " *Brookside Veneers v. United States,* 6 Fed. Cir. (T) 121, 125, 847 F.2d 786, 789 (1988), *cert. denied* 488 U.S. 943, 109 S.Ct. 369, 102 L.Ed.2d 358 (1988) (quoting *Rohm & Haas Co. v. United States,* 2 Fed. Cir. (T) 28, 29, 727 F.2d 1095, 1097 (1984)(quoting *Bentkamp v. United States,* 40 C.C.P.A. 70, 78, 1952 WL 5939 (1952))); see also, *Texaco Marine*

1. Statistical suffixes omitted.

*Services, Inc. v. United States,* 44 F.3d 1539, 1544 (Fed.Cir.1994) (quoting *Brookside Veneers* and applying the principle to a vessel repair statute).

18. The subject merchandise, a comforter comprising an unadorned cotton shell filled with down, is not within the common meaning of the phrase "comforter of cotton". Therefore, Plaintiff's proposed classification, HTSUS 9404.90.80, is incorrect.

19. The subject merchandise is not described by any of the substantive subheadings under HTSUS 9404. Therefore the merchandise is properly classified under HTSUS 9404.90.90, the final basket clause, which provides for merchandise that is described by heading 9404 but not by any of the other subordinate subheadings: "... articles of bedding and similar furnishings ... Other: Other." HTSUS 9404.90.90.

20. The court rejects Plaintiff's argument that the language "stuffed with any material" set forth in HTSUS heading 9404 should be given effect as though set forth in subheading 9404.90.80. This contention is based on the theory of invasive language, which originated under TSUS. This theory suggests that through the use of certain language, Congress can indicate an intent that the effect of language in a certain tariff heading should extend to other headings.

The theory of invasive language, however, is applied only where the language at issue "is so sweeping, clear, and definite as to the goods subjected to its operation that there is no room for interpretation and no doubt left as to the goods which Congress meant to include." *Swiss Mfrs. Assn. v. United States,* 39 Cust. Ct. 227, 237 (1957). The *Swiss Mfrs.* court gave examples of the requisite language: "in such cases, Congress has made its intention clear by means of appropriate language, such as 'whether or not more specifically provided for elsewhere,' or 'by whatever name known, and to whatever use applied, and whether or not named, described, or provided for elsewhere in this Act.'" *Id.* (cita-

tions omitted). The phrase "stuffed with any material" does not rise to this level of expressed intention, and therefore cannot be interpreted as clear evidence of Congressional intent that heading 9404 be invasive.

21. The references to eiderdowns and other types of merchandise in the statistical suffixes of HTSUS 9404.90.80 and 9404.90.90 are irrelevant to classification because statistical suffixes are not part of the legally binding, statutory language of HTSUS. *Pima Western, Inc. v. United States,* 915 F.Supp. 399, 404 (C.I.T.1996). Therefore, the inclusion of eiderdowns in the statistical suffix to HTSUS 9404.90.80 is irrelevant.

22. General Rules of Interpretation ("GRI") 2(b) instructs that "[a]ny reference to goods of a given material or substance shall be taken to include a reference to goods consisting wholly or partly of such material or substance." Application of this rule to classify a comforter filled with down as a "comforter of cotton" would produce the absurd or anomalous result of classifying merchandise as something that it plainly is not. Tariff terms should be interpreted to avoid absurd or anomalous results. 2 Sturm, Customs Law & Administration § 51.4, p. 29 (3rd Ed.1995); *see, e.g., Nissho–Iwai American Corp. v. United States,* 10 C.I.T. 154, 641 F.Supp. 808, 812 (1986). The proper interpretation of the apparent conflict between the common meaning of "comforter of cotton" and GRI 2(b) is to classify according to the most likely intention of Congress, which is not to promote such an absurd result.

In the alternative, even if classification were done based on GRI 2(b)'s reference to GRI 3(b), the subject merchandise would not be classified as "comforters of cotton", by the application of the principles of GRI 3(b). GRI 3(b) cannot be applied here directly because it requires that "goods are, *prima facie,* classifiable under two or more headings", and the headings here are mutually exclusive basket provisions. Nonetheless, GRI 2(b)'s reference

to the *principles* of Rule 3 rather than the rule itself[2] incorporates into GRI 2(b) GRI 3(b)'s essential character analysis. Under that analysis, goods "shall be classified as if they consisted of the material or component which gives them their essential character." GRI 3(b). The comforters' essential character, *i.e.,* its insulating quality and its usefulness as a bed covering, is imparted by the down filling not the cotton shell. Therefore, the merchandise is properly classified under HTSUS 9404.90.90.

23. Defendant's classification of the subject merchandise under HTSUS 9404.90.90 is correct.

### JUDGMENT ORDER

This case having been heard at trial and submitted for decision, and the Court, after due deliberation, having rendered a decision herein, now in conformity with said decision, it is hereby

**ORDERED, ADJUDGED and DECREED** that the classification of the subject merchandise by the United States Customs Service under subheading 9404.90.90 of the Harmonized Tariff Schedule of the United States is affirmed; and it is further

**ORDERED, ADJUDGED and DECREED** that this action be and hereby is dismissed.

---

**2.** GRI 2(b) is the only GRI to incorporate the *principles* of another rule, as opposed to providing for analysis under the other rule. Thus, GRI 2(b) contemplates drawing the principles of GRI 3 into an analysis under GRI 2(b), despite the clear provision that one cannot move from GRI 2(b) to GRI 3 unless two or more headings are *prima facie* applicable. In this way, the principles underlying essential character analysis may be imported into GRI 2(b).