(C.D. 2089)

GENERAL SYSTEMS SERVICE, INC. *v.* UNITED STATES

United States Customs Court, First Division

(Decided June 4, 1959)

*Michael Stramiello, Jr.*, for the plaintiff.
*George Cochran Doub*, Assistant Attorney General (*Murray Sklaroff*, trial attorney), for the defendant.

Before OLIVER, MOLLISON, and WILSON, Judges

OLIVER, Chief Judge: The protests enumerated in schedule "A," hereto attached and made a part hereof, relate to merchandise identified on the invoices as "adhesive tapes" of various sizes. Although the merchandise is the same in all of the entries involved herein, the collector applied three different classifications, i.e., as "finished articles in chief value of acrylic resin," with a duty assessment at the rate of 20 per centum ad valorem under the provision in paragraph 31(a)(2) of the Tariff Act of 1930, as modified by T.D. 51802, for "Cellulose acetate, and compounds, combinations, or mixtures containing cellulose acetate: * * * Made into finished * * * articles of which any of the foregoing is the component material of chief value, and not specially provided for"; or, either directly at 25 per centum ad valorem under paragraph 31(b)(2) of the Tariff Act of 1930, as modified by T. D. 52739, or, by similitude, under said modified paragraph 31(b)(2) and paragraph 1559 of the Tariff Act of 1930, as originally enacted or as amended by T.D. 53599, as manufactures of compounds of cellulose, not acetate, made in chief value from transparent sheets not over three one-thousandths of an inch thick. At the time of hearing, Government counsel abandoned the collector's direct assessments under paragraph 31(a)(2), as modified by T.D. 51802, and paragraph 31(b)(2), as modified by T.D. 52739, and stated that

defendant claims all of the merchandise under consideration is properly classifiable, by similitude, under said amended paragraph 31(b) (2), and paragraph 1559, *supra*, being the classification adopted by the collector as to some of the entries in question.

Counsel for the respective parties have stipulated that "the merchandise at bar consists of rolled strips of cellophane coated with an adhesive," that "the value of the adhesive exceeds the value of the cellophane," that the adhesive "was produced by combining a copolymer of acrylic resin, a synthetic product, with other ingredients," and that acrylic resins have uses other than as an ingredient in adhesives. Samples are in evidence (plaintiff's exhibits 1, 2, and 3). They consist of rolls of self-adhesive tapes, having the general appearance of what is ordinarily recognized as scotch tape. The width of the tape on each roll is different and all of them have a cardboard core in the center. One of them (plaintiff's exhibit 3) has a plastic wrapping around it.

Plaintiff makes several claims. Consideration, first, will be directed to the contention that the collector's assessment at the rate of 25 per centum ad valorem "whether directly or by virtue of the similitude provisions of paragraph 1559 under paragraph 31(b) (2) of the Act was illegal, null and void since it resulted in the imposition of a higher rate of duty to the involved merchandise than theretofore applicable under an established and uniform practice without publication of notice thereof as required by the provisions of Section 315(d) of the Tariff Act of 1930, as amended by section 3(a) of the Customs Simplification Act of 1953, 67 Stat. 508, T.D. 53318." To support the contention, plaintiff relies on the following stipulated facts:

(1) That for approximately 18 months subsequent to June 1, 1954, "plaintiff's importations of merchandise such or similar to that before the court was assessed with duty at the rate of 20 per cent ad valorem under the provisions of paragraph 31(a) (2), of the Tariff Act of 1930, as modified, and thereafter was assessed with duty at the rate of 25 per cent ad valorem under the provisions of 31(b) (2), and under the provisions of paragraph 1559." (R. 16.)

(2) That "no notice of a ruling increasing the rate of duty assessed on plaintiff's importations of merchandise such as or similar to that before the court from 20 per cent ad valorem to 25 per cent ad valorem, as aforesaid, was ever published in the weekly Treasury Decisions." (R. 16.)

It will be observed that the foregoing agreed set of facts relates solely to plaintiff's importations. There is nothing to suggest therefrom that the tariff treatment of self-adhesive tapes imported by plaintiff was a general and uniform practice. On the contrary, there is evidence herein that negatives plaintiff's contention. In this connection, reference is made to two letters from customs officials ad-

dressed to counsel for plaintiff (plaintiff's exhibits 6 and 7). Both letters are replies to inquiries, requesting consideration of certain contentions with reference to the classification of these self-adhesive tapes. The letter (plaintiff's exhibit 7), from the chief of the Division of Classification and Drawbacks of the Bureau of Customs in Washington, D.C., concludes with the following paragraph:

> There is not, and has not been, a uniform and established practice of classifying articles, finished or partly finished, wholly or in chief value of acrylic resin under paragraph 31(a)(2), either directly or by similitude. Therefore, the public notice provided for in section 315 of the tariff act, as amended, is not required to be given in this case.

With respect to the claim herein of long-continued administrative practice, it is appropriate to quote the following from *P. Silverman & Son* v. *United States*, 32 C.C.P.A. (Customs) 99, C. A. D. 292:

> * * * But, even if long-continued administrative practice had been established, that fact alone would not be controlling. It would be important in the consideration of the applicability of the doctrine of legislative approval of long-continued administrative practice, but the application of that doctrine is not urged here.

> * * * Of course, it is a consideration which, under certain circumstances, would have great weight in the decision of a close issue; but to hold that, in all cases, administrative practice, even though long-continued and uniform throughout the United States, should bar a subsequent change in classification if the circumstances warranted making such a change would perpetuate error until changed by Congress, would greatly hamper the proper administration of the customs laws, and therefore would be a dangerous principle to follow.

Plaintiff's claim concerning long-continued administrative practice is denied. Equally untenable is the claim, alleging that the similitude provisions of paragraph 1559, as originally enacted or as amended by T.D. 53599, contemplate comparison of the article under consideration with *"an imported article which is chargeable with duty"* [italics quoted], as argued in plaintiff's brief. There is nothing in the clear and unambiguous statutory language of said paragraph 1559 to suggest such an interpretation. The well-established doctrine for applying the similitude provisions is that if an article is found not enumerated in the tariff laws, then the first inquiry is whether it bears a similitude, in a manner provided by statute, to any article enumerated as chargeable with duty and, if it does, and the similitude is substantial, it is deemed to be the same and to be charged accordingly. *Thomas* v. *United States*, 1 Ct. Cust. Appls. 86, T.D. 31107. That an item of domestic manufacture influenced classification by similitude of the merchandise in question, is not a consideration pertinent to the present issue. The statute, paragraph 1559, requires that classification by similitude shall be based upon any "article enumerated in this Act as chargeable with duty." Determining

whether or not an article is "enumerated," as contemplated by paragraph 1559, involves judicial interpretation of tariff provisions invoked by the party urging classification by similitude. The source of an alleged enumerated article is immaterial. Plaintiff's contention that an enumerated article, within the meaning thereof under paragraph 1559, must be an article actually imported is without merit. The conclusion has the effect of nullifying the collector's classification, by similitude, under paragraph 31(b)(2), as modified, *supra*. Under the well-established principle that "the collector is presumed to have found every fact to exist that was necessary to sustain his classification" (*E. I. de Pont de Nemours & Co.* v. *United States*, 27 C.C.P.A. (Customs) 146, C.A.D. 75), it follows that the "rolled strips of cellophane coated with an adhesive," which the classifying officer "used in applying the similitude provisions" are in chief value of compounds of cellulose. The parties have stipulated that the merchandise in question is in chief value of an adhesive. The substantial difference between the two classes of merchandise renders inapplicable to the self-adhesive tapes in question, the classification by similitude, invoked by the collector and claimed herein by defendant.

The record in *Vandergrift Forwarding Co. et al.* v. *United States*, 37 Cust. Ct. 18, C.D. 1793, was incorporated herein by consent of the parties. In that case, the merchandise consisted of self-adhesive tapes composed of a self-adhesive compound and cellophane. The self-adhesive compound consisted of pure rubber, resin, and tackifiers (identified as polybutine, wool fat, antioxidant, and benzene) that were dispersed or dissolved in petroleum spirit. In this case, the merchandise consists of self-adhesive tapes, composed in chief value of an adhesive that was produced "by combining a copolymer of acrylic resin, a synthetic product, with other ingredients." Seeking to support defendant's position on the basis of the incorporated record, Government counsel argues, from *the weight of the decision in the prior case*, particularly as it concerned determination of the component material of chief value. We cannot view the incorporated record in that light. Whatever effect the previous case may have on the present case must come from the evidence adduced therein and not from any reasoning followed in the decision. By virtue of the agreement herein that the self-adhesive tapes in question are in chief value of the adhesive, there is no place for discussion in the present case on the matter of component material of chief value. Being admittedly in chief value of an adhesive, and not of cellophane or compounds of cellophane, made in chief value from transparent sheets, the articles in question are *ipso facto* eliminated from classification under paragraph 31(b)(2), as modified, *supra*. Defendant's claim is overruled.

In its claims concerning the proper classification of the merchandise, plaintiff alleges that these self-adhesive tapes are classifiable either as manufactures of glue, not specially provided for, under paragraph 41 of the Tariff Act of 1930, as modified by T.D. 51802, with duty assessment at the rate of 15 per centum ad valorem; or, by similitude, as gummed paper, not specially provided for, under paragraph 1405, as modified by T.D. 52739, and paragraph 1559, as enacted or as amended by T.D. 53599, with duty assesment at the rate of 2½ cents per pound; or as nonenumerated manufactured articles under paragraph 1558, as modified by T.D. 52739, supplemented by T.D. 52827, carrying a dutiable rate of 10 per centum ad valorem. Other claims alleged in the protests were neither stressed during the trial nor discussed in the briefs of counsel. Reference thereto is deemed unnecessary.

To support the claim for classification as manufactures of glue under paragraph 41, as modified, *supra*, plaintiff introduced the testimony of the executive vice president of the Arabol Manufacturing Co., a manufacturer of and dealer in glues and adhesives of various types, including merchandise like that involved herein. The witness testified that he has been associated with the company since 1931 and that his experience has included laboratory, production, sales, and administrative duties. Based on his experience with the trade, he stated that the term "adhesive" refers to "any composition that is used to stick things together" (R. 22), that the term "glue" has the same meaning, and that the two terms are used interchangeably. Asked what he would consider the present merchandise to be, he replied, "That is pressure sensitive adhesive, or pressure sensitive glue." (R. 28.) On cross-examination, the witness expressed agreement with the definition of "adhesive," appearing in the Condensed Chemical Dictionary, fifth edition, particularly as the definition states, in part, that "Adhesive is the general term and includes among others cement (pyroxylin and rubber), glue, mucilage and paste."

No question of commercial designation is presented. In fact, the record will not permit application of the principle. Counsel, in his brief, states that plaintiff "relies upon the common meaning of the term 'glue'." Plaintiff's testimony with respect to common meaning is advisory only. *United States* v. *Ben Felsenthal & Co. et al.*, 16 Ct. Cust. Appls. 15, T.D. 42713. In the judicial interpretation of a tariff term, based on common meaning, the court is bound by no evidence. *Marshall Field & Co.* v. *United States*, 45 C.C.P.A. (Customs) 72, C.A.D. 676. The court may, as an aid, consult the dictionaries, lexicons, and written authorities in determining such common meaning. *United States* v. *Tropical Craft Corp.*, 42 C.C.P.A. (Customs) 223, C.A.D. 598. We proceed accordingly.

The word, "adhesive" is defined in Webster's New International Dictionary as follows:

**adhesive,** *n.* **1.** An adhesive substance. **2.** A substance that causes bodies to adhere to each other, as glue, sealing wax, etc.; also, a cement.

The same dictionary defines the word "glue" as follows:

**glue,** *n.* \* \* \* A hard, brittle, usually impure, gelatin, obtained by boiling to a jelly the skins, hoofs, bones, etc., of animals, or the swimming bladders and skins of fish. \* \* \* **3.** By extension, any of various adhesive or viscous substances; as, casein, blood, or vegetable *glue.*

In Funk & Wagnalls New Standard Dictionary, the two words are defined as follows:

**adhesive,** *n.* A substance that causes adhesion.

**glue,** *n.* A viscid adhesive preparation, mostly called animal glue, fish glue, vegetable glue, casein glue, and resin glue: sold either as thin, hard, brittle cakes, or as powder, that must be melted or dissolved for use, or in liquid form ready to be applied.

From the foregoing quoted definitions, it can be said that the term "adhesive" is a general term that embraces a class of substances all of which possess adhesive properties and that "glue" is one of such substances. Glue is a particular kind of adhesive whose basic substance is of natural origin, either animal or vegetable. The Encyclopaedia Britannica states that, "Glues may be most conveniently classified according to their sources: bone glue, skin glue and fish glue; these may be regarded as impure forms of bone gelatin, skin gelatin and isinglass."

In this case, the parties have stipulated that the adhesive used in manufacturing the rolls of self-adhesive tapes under consideration is a synthetic product, identified herein as a copolymer of acrylic resin. Since the articles in question are made of an adhesive, produced from a synthetic product, and not from a substance of natural origin, they are not manufactures of glue, as contemplated by amended paragraph 41, *supra.*

Our conclusion, limiting the provisions for glue and manufactures thereof to substances derived from natural sources finds support in the Summary of Tariff Information, 1929, which was compiled by the United States Tariff Commission for use of the Committee on Ways and Means in its consideration of adjustments in the Tariff Act of 1922. The publication, in its reference to glue, states as follows (p. 221):

GLUE

**Description and uses.**—Glue is an organic colloidal material obtained from certain properly prepared animal bones and tissues by treatment with hot water.

Commercial supplies may be classified as follows:

(*a*) Bone glues, made from bones of cattle, usually sold in solid form.

(5) Hide glue, made from trimmings of skins and hides, ears, tails, etc. Hide glues have greater adhesive power than the other grades. The better grades of hide glue can hardly be distinguished from technical gelatin.

*     *     *     *     *     *     *

Glues made from other raw materials include:

(1) Casein glues made from casein. * * * In the dry form casein glue contains about 80 per cent casein. This has replaced hide glue to a considerable extent in veneer work, because of its low cost and because it is waterproof.

(2) Vegetable glue, including a wide variety of products made from cassava, dextrine, starch, and gum. In general, vegetable glues are cheaper than animal glues, and compete in use with the low-grade hide and bone glues.

(3) Soya-bean glue, recently introduced in the plywood trade for which use it is less expensive than animal glue.

. (4) Fish glue, made from fish skins, bones, and heads, usually sold in liquid form, largely for household use.

Plaintiff's claim for classification of the present merchandise, by similitude to gummed paper, was also one of the claims advanced in the *Vandergrift* case, *supra*. In the incorporated record, plaintiffs introduced one witness who was engaged in the business of buying and selling adhesive tapes. His testimony, as summarized therein, is as follows:

* * * The witness' testimony was directed toward the matter of similitude between the imported adhesive tapes and gummed paper. On direct examination, the witness stated that both commodities—these adhesive tapes and gummed paper—are used for "sealing packages, holding, and securing." On cross-examination, he explained certain essential differences between the two products. Confronted with gummed paper (defendant's illustrative exhibit A), the witness admitted that such paper is opaque, while the adhesive tapes in question are transparent. He stated further that gummed paper must be moistened for effective use, whereas pressure alone is sufficient for practical use of the imported adhesive tapes. In his testimony on redirect examination, the witness stated that although some gummed papers, like the merchandise in question, is pressure sensitive, all gummed paper is opaque. There are no gummed papers that are transparent, like the self-adhesive tapes in question.

The sample (plaintiff's illustrative exhibit 5), introduced in the present case as a type of gummed paper, is a contradiction of the testimony in the incorporated case to the effect that all gummed paper is opaque. This sample (exhibit 5, *supra*) is a spool of very light and rather flimsy gummed paper that has some degree of transparency, but which is not pressure sensitive. It must be moistened to be effectively used.

In this case, as in the *Vandergrift* case, plaintiff relies on the element of use to support its claim for classification by similitude to gummed paper. That the imported self-adhesive tapes and gummed papers provided for in the law are concededly used for "sealing packages, holding, and securing," is not sufficient for classification by similitude. Such a general usage of two comparable products will not satisfy the statute, paragraph 1559, which requires that there

must be a substantial sameness in the method of use and the effect, or the productive result, of the imported product and the one specifically provided for in the law. *Pickhardt* v. *Merritt*, 132 U.S. 252. The vital distinction between these self-adhesive tapes and gummed papers concerns a peculiar characteristic of each. Gummed papers are opaque; self-adhesive tapes are transparent. This distinction makes the comparable products susceptible of producing materially different results when applied to the same general use, particularly in the prominent use of holding and securing printed matter that has value as reading material. Opaque gummed papers are useless for such purpose; transparent self-adhesive tapes must be employed. The two comparable products also differ in their method of use. Self-adhesive tapes are pressure sensitive; gummed papers require moistening for practical use. The differences in use between the two commodities are substantial and are sufficient to deny plaintiff's claim for classification of the merchandise in question by similitude in use with gummed papers. *Murphy* v. *Arnson*, 96 U.S. 131; *Corporacion Argentina de Productores de Carnes* v. *United States*, 29 C.C.P.A. (Customs) 288, C.A.D. 204.

Since these self-adhesive tapes are manufactured articles that are not specifically provided for, nor classifiable, by similitude, to any article provided for in the law, they are, therefore, properly relegated for classification under the residuary provision for nonenumerated manufactured articles in paragraph 1558, as amended, *supra*, and dutiable thereunder at the rate of 10 per centum ad valorem, as claimed by plaintiff.

The protests are sustained and judgment will be rendered accordingly.