(C.D. 2259)

GENERAL SYSTEMS SERVICE, INC. *v.* UNITED STATES

United States Customs Court, First Division

(Decided May 29, 1961)

*Michael Stramiello, Jr.,* for the plaintiff.
*William H. Orrick, Jr.,* Assistant Attorney General (*Murray Sklaroff,* trial attorney), for the defendant.

Before OLIVER, MOLLISON, and WILSON, Judges

OLIVER, Chief Judge: The protests enumerated in schedule "A," hereto attached and made a part hereof, relate to certain cellophane

tapes coated with an adhesive. Although the merchandise is the same in all of the entries involved herein, the collector applied three different classifications, i.e., as "finished articles in chief value of acrylic resin," with a duty assessment at the rate of 20 per centum ad valorem under the provision in paragraph 31(a)(2) of the Tariff Act of 1930, as modified by T.D. 51802, for "Cellulose acetate, and compounds, combinations, or mixtures containing cellulose acetate: * * * Made into finished * * * articles of which any of the foregoing is the component material of chief value, and not specially provided for"; or, either directly at 25 per centum ad valorem under paragraph 31(b)(2) of the Tariff Act of 1930, as modified by T.D. 52739, or, by similitude, under said modified paragraph 31(b)(2) and paragraph 1559 of the Tariff Act of 1930, as originally enacted or as amended by T.D. 53599, as manufactures of compounds of cellulose, not acetate, made in chief value from transparent sheets not over three one-thousandths of an inch thick. ·

Government counsel has abandoned the collector's direct assessments under paragraph 31(a)(2), as modified by T.D. 51802, and paragraph 31(b)(2), as modified by T.D. 52739, so that defendant now claims that all of the merchandise under consideration is properly classifiable, by similitude, under said amended paragraph 31(b)(2), and paragraph 1559, *supra*, being the classification adopted by the collector as to the merchandise covered by some of the entries in question.

Plaintiff claims that the merchandise is properly dutiable at 15 per centum ad valorem under paragraph 41 of the Tariff Act of 1930, as modified by T.D. 51802, as manufactures of glue, not specially provided for; or at the rate of 2½ cents per pound under paragraph 1405, as modified by T.D. 52739, as gummed paper, or by similitude to gummed paper, under said modified paragraph 1405, and paragraph 1559, as enacted or as amended by T.D. 53599; or at the rate of 10 per centum ad valorem as nonenumerated manufactured articles under paragraph 1558, as modified by T.D. 52739, supplemented by T.D. 52827. ·

At the time of trial, the parties agreed that the articles in question are similar in all material respects to the rolled strips of cellophane coated with an adhesive that were the subject of *General Systems Service, Inc.* v. *United States*, 44 Cust. Ct. 46, C.D. 2151, which was a decision on rehearing of *Same* v. *Same*, 42 Cust. Ct. 215, C.D. 2089, the record in which cases was incorporated herein by consent. It is appropriate to note that the record in *Vandergrift Forwarding Co. et al.* v. *United States*, 37 Cust. Ct. 18, C.D. 1793, which also concerned the classification of adhesive tapes, was incorporated in the record in the *General Systems Service* cases.

The record in the *General Systems Service* cases includes a stipulation, wherein counsel for the respective parties agree that "the mer-

chandise at bar consists of rolled strips of cellophane coated with an adhesive," that "the value of the adhesive exceeds the value of the cellophane," that the adhesive "was produced by combining a copolymer of acrylic resin, a synthetic product, with other ingredients," and that acrylic resins have uses other than as an ingredient in adhesives. From an examination of the samples in evidence (plaintiff's exhibits 1, 2, and 3, in protests 299234–K, etc.), it appears that the articles in question consist of rolls of self-adhesive tapes, having the general appearance of what is ordinarily recognized as scotch tape. The width of the tape on each roll is different, and all of them have a cardboard core in the center. One of them (exhibit 3, *supra*) has a plastic wrapping around it.

Plaintiff offered no additional testimony herein, but rested its case on the evidence adduced in the incorporated records. Hence, the following discussion of plaintiff's claims is substantially the same as that which appears in our decision in the *General Systems Service* case, C.D. 2089, *supra*.

To support the claim for classification as manufactures of glue under paragraph 41, as modified, plaintiff introduced the testimony of the executive vice president of the Arabol Manufacturing Co., a manufacturer of and dealer in glues and adhesives of various types, including merchandise like that involved herein. Based on his experience with the trade, he stated that the term "adhesive" refers to "any composition that is used to stick things together"; that the term "glue" has the same meaning; and that the two terms are used interchangeably. Asked what he would consider the present merchandise to be, he replied, "That is pressure sensitive adhesive, or pressure sensitive glue." On cross-examination, the witness expressed agreement with the definition of "adhesive," appearing in the Condensed Chemical Dictionary, fifth edition, particularly as the definition states, in part, that "Adhesive is the general term and includes among others cement (pyroxylin and rubber), glue, mucilage and paste."

No question of commercial designation is presented. Counsel for plaintiff, in a brief, states that plaintiff "relies upon the common meaning of the term 'glue.'" Plaintiff's testimony with respect to common meaning is advisory only. *United States* v. *Ben Felsenthal & Co. et al.*, 16 Ct. Cust. Appls. 15, T.D. 42713. In the judicial interpretation of a tariff term, based on common meaning, the court is bound by no evidence. *Marshall Field & Co.* v. *United States*, 45 C.C.P.A. (Customs) 72, C.A.D. 676. The court may, as an aid, consult the dictionaries, lexicons, and written authorities in determining such common meaning. *United States* v. *Tropical Craft Corp.*, 42 C.C.P.A. (Customs) 223, C.A.D. 598. We proceed accordingly.

The word, "adhesive," is defined in Webster's New International Dictionary as follows:

adhesive, *n.* 1. An adhesive substance. 2. A substance that causes bodies to adhere to each other, as glue, sealing wax, etc.; also, a cement.

The same dictionary defines the word "glue" as follows:

glue, *n.* * * * A hard, brittle, usually impure, gelatin, obtained by boiling to a jelly the skins, hoofs, bones, etc., of animals, or the swimming bladders and skins of fish. * * * 3. By extension, any of various adhesive or viscous substances; as, casein, blood, or vegetable *glue.*

In Funk & Wagnalls New Standard Dictionary, the two words are defined as follows:

adhesive, *n.* A substance that causes adhesion.

glue, *n.* A viscid adhesive preparation, mostly called animal glue, fish glue, vegetable glue, casein glue, and resin glue: sold either as thin, hard, brittle cakes, or as powder, that must be melted or dissolved for use, or in liquid form ready to be applied.

From the foregoing quoted definitions, it can be said that the term "adhesive" is a general term that embraces a class of substances all of which possess adhesive properties and that "glue" is one of such substances. Glue is a particular kind of adhesive whose basic substance is of natural origin, either animal or vegetable. The Encyclopaedia Britannica states that, "Glues may be most conveniently classified according to their sources: bone glue, skin glue and fish glue; these may be regarded as impure forms of bone gelatin, skin gelatin and isinglass."

The parties herein have stipulated that the adhesive used in manufacturing the rolls of self-adhesive tapes under consideration is a synthetic product, identified as a copolymer of acrylic resin. Since the articles in question are made of an adhesive, produced from a synthetic product, and not from a substance of natural origin, they are not manufactures of glue, as contemplated by amended paragraph 41, *supra.*

Our conclusion, limiting the provisions for glue and manufactures thereof to substances derived from natural sources finds support in the Summary of Tariff Information, 1929, which was compiled by the United States Tariff Commission for use of the Committee on Ways and Means in its consideration of adjustments in the Tariff Act of 1922. The publication, in its reference to glue, states as follows (p. 221):

### GLUE

Description and uses.—Glue is an organic colloidal material obtained from certain properly prepared animal bones and tissues by treatment with hot water. Commercial supplies may be classified as follows:

(a) Bone glues, made from bones of cattle, usually sold in solid form.

(b)  Hide glue, made from trimmings of skins and hides, ears, tails, etc. Hide glues have greater adhesive power than the other grades. The better grades of hide glue can hardly be distinguished from technical gelatin.

\*        \*        \*        \*        \*        \*        \*

Glues made from other raw materials include:

(1)  Casein glues made from casein. \* \* \* In the dry form casein glue contains about 80 per cent casein. This has replaced hide glue to a considerable extent in veneer work, because of its low cost and because it is waterproof.

(2)  Vegetable glue, including a wide variety of products made from cassava, dextrine, starch, and gum. In general, vegetable glues are cheaper than animal glues, and compete in use with the low-grade hide and bone glues.

(3)  Soya-bean glue, recently introduced in the plywood trade for which use it is less expensive than animal glue.

(4)  Fish glue, made from fish skins, bones, and heads, usually sold in liquid form, largely for household use.

The report of the Tariff Commission (Report 135—Second Series), mentioned in plaintiff's brief, presents no contradiction to our restrictive interpretation of paragraph 41, *supra*, limiting the provision for glue to "substances derived from natural sources." On the contrary, the report lends support to this conclusion through the statement included therein that the principal synthetic resin glues "are not dutiable under paragraph 41 but, depending upon their composition, the individual glues are dutiable under other paragraphs of the Tariff Act of 1930." (P. 5, note 3.)

In the absence of proof—and there is none before us—in support of plaintiff's claim for direct classification of the self-adhesive tapes in question as gummed paper under paragraph 1405, as modified, that claim must be, and hereby is, overruled.

The claim for classification of the present merchandise, by similitude to gummed paper, was also one of the claims advanced in the *Vandergrift* case, *supra*. In that incorporated record, plaintiffs introduced one witness who was engaged in the business of buying and selling adhesive tapes. His testimony, as summarized therein, is as follows:

\* \* \* The witness' testimony was directed toward the matter of similitude between the imported adhesive tapes and gummed paper. On direct examination, the witness stated that both commodities—these adhesive tapes and gummed paper—are used for "sealing packages, holding, and securing." On cross-examination, he explained certain essential differences between the two products. Confronted with gummed paper (defendant's illustrative exhibit A), the witness admitted that such paper is opaque, while the adhesive tapes in question are transparent. He stated further that gummed paper must be moistened for effective use, whereas pressure alone is sufficient for practical use of the imported adhesive tapes. In his testimony on redirect examination, the witness stated that although some gummed papers, like the merchandise in question, is pressure sensitive, all gummed paper is opaque. There are no gummed papers that are transparent, like the self-adhesive tapes in question.

The sample of gummed paper (plaintiff's illustrative exhibit 5 in protests 299234–K, etc.) is a contradiction of the testimony in the

*Vandergrift* case to the effect that all gummed paper is opaque. The said sample is a spool of very light and rather flimsy gummed paper that has some degree of transparency, but which is not pressure sensitive. It must be moistened to be effectively used.

Plaintiff, in this case, having added nothing to the evidence adduced in the incorporated records, our disposition herein of the claim for classification of these self-adhesive tapes by similitude to gummed paper is the same as our conclusion on the same issue in the *General Systems Service, Inc.*, case (C.D. 2089), *supra*, wherein we stated as follows:

In this case, as in the *Vandergrift* case, plaintiff relies on the element of use to support its claim for classification by similitude to gummed paper. That the imported self-adhesive tapes and gummed papers provided for in the law are concededly used for "sealing packages, holding, and securing," is not sufficient for classification by similitude. Such a general usage of two comparable products will not satisfy the statute, paragraph 1559, which requires that there must be a substantial sameness in the method of use and the effect, or the productive result, of the imported product and the one specifically provided for in the law. *Pickhardt* v. *Merritt*, 132 U.S. 252. The vital distinction between these self-adhesive tapes and gummed papers concerns a peculiar characteristic of each. Gummed papers are opaque; self-adhesive tapes are transparent. This distinction makes the comparable products susceptible of producing materially different results when applied to the same general use, particularly in the prominent use of holding and securing printed matter that has value as reading material. Opaque gummed papers are useless for such purpose; transparent self-adhesive tapes must be employed. The two comparable products also differ in their method of use. Self-adhesive tapes are pressure sensitive; gummed papers require moistening for practical use. The differences in use between the two commodities are substantial and are sufficient to deny plaintiff's claim for classification of the merchandise in question by similitude in use with gummed papers. *Murphy* v. *Arnson*, 96 U.S. 131; *Corporation Argentina de Productores de Carnes* v. *United States*, 29 C.C.P.A. (Customs) 288, C.A.D. 204.

Consideration is now directed to defendant's claim for classification by similitude as manufactures of compounds of cellulose, not acetate, made in chief value from transparent sheets not over three one-thousandths of an inch thick, under paragraph 31(b)(2), as modified, and paragraph 1559, either as originally enacted or as amended. It should be noted that a presumption of correctness attaches to the collector's action only in those protests where the merchandise was classified under the provision that is alleged by defendant to apply to all of the merchandise involved herein. In those protests included herein, where defendant has abandoned the collector's classification, there is no presumption of correctness attached to the action of the classifying officer.

Defendant, in support of its claim, introduced the testimony of the technical director of the industrial adhesive division of Johnson & Johnson, "whose products consist of adhesive tapes and adhesive cements primarily." (R. 6.) The witness merely identified a roll

of pressure sensitive cellophane tape (defendant's exhibit A), produced by his employer, and then stated that the cellophane, which is the basic material used in making the finished roll of tape, "represents about 60 to 75 per cent of the total raw materials in this product." (R. 12.)

Classification by similitude under paragraph 1559 of the Tariff Act of 1930, as originally enacted, was dependent on the likeness between comparable products in any one of four different characteristics, i.e., material, quality, texture, or use. Substantial similitude in any one of those four elements was sufficient to establish classification by similitude. *Roovers Bros., Inc.* v. *United States*, 23 Cust. Ct. 53, C.D. 1190; *Metropolitan Metal Sponge Mfg. Co.* v. *United States*, 39 Cust. Ct. 415, Abstract 61191. Under the provisions of paragraph 1559, as modified, *supra*, only one element of comparison, i.e., the matter of use, is determinative of classification of merchandise by similitude.

Defendant has failed to substantiate its claim. There is nothing in the evidence adduced herein by the Government to show a similarity, in any of the statutory particulars hereinabove set forth, between the imported self-adhesive tapes (exhibits 1, 2, and 3, *supra*) in which "the value of the adhesive exceeds the value of the cellophane" and the alleged comparable pressure sensitive cellophane tape (exhibit A, *supra*) of domestic manufacture. On the basis of the evidence before us, the claim for classification by similitude under paragraph 31(b)(2), as modified, and paragraph 1559, as enacted or as amended, is overruled.

Since the preponderance in weight of the evidence in the combined records involved herein shows that the self-adhesive tapes under consideration are manufactured articles which are not specifically provided for, nor classifiable by similitude to any article provided for in the law, they are, therefore, properly relegated for classification under the residuary provision for nonenumerated manufactured articles in paragraph 1558, as amended, *supra*, as claimed by plaintiff.

The protests are sustained and judgment will be rendered accordingly.