(C.D. 2955)

MARMAX TRADING CORP. *v*. UNITED STATES

United States Customs Court, First Division

(Decided April 11, 1967)

*Tompkins & Tompkins* (*Allerton deC. Tompkins* of counsel) for the plaintiff.
*Barefoot Sanders*, Assistant Attorney General (*Herbert L. Warren, Bernard J. Babb*, and *Alfred A. Taylor, Jr.*, trial attorneys), for the defendant.

Before OLIVER, WATSON, and RAO, Judges

RAO, Chief Judge: The merchandise involved in these cases, consolidated at the trial, consists of plastic cases or containers for drills, bits, chisels, and other hand tools, imported from Japan on various dates in 1959. The classification of the tools is not involved. The cases were assessed with duty at 20 per centum ad valorem under paragraph 1531 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802, pursuant to paragraph 1559(a) of said act, as amended by the Customs Simplification Act of 1954, by similitude to leather cases. Various claims are made in the protests, but those relied on are that most of the containers are not similar in use to any article enumerated in the tariff act and should be classified as nonenumerated manufactured articles under paragraph 1558 of said tariff act, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739, and 86 Treas. Dec. 347, T.D. 52827, at 10 per centum ad valorem. It is claimed that the container for item No. 654, a 13-piece drill set, is similar in use to unplated household utensils or hollowware in chief value of steel, dutiable at 17 per centum ad valorem under paragraph 339 of said tariff act, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108, or, alternatively, under paragraph 397 of said tariff act, as so modified, by similitude to articles of metal at 19 per centum ad valorem.

The pertinent provisions of the tariff act, as modified, are as follows:

Paragraph 1531, as modified by T.D. 51802:

Bags, baskets, * * * and other boxes and cases, not jewelry, wholly or in chief value of leather * * * not specially provided for:

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

    Bags, baskets, * * * and boxes and cases, not jewelry; any of the foregoing not provided for heretofore in this item_____ 20% ad val.

Paragraph 1558, as modified by T.D. 52739 and T.D. 52827:

Articles manufactured, in whole or in part, not specially provided for (except * * *)_____ 10% ad val.

Paragraph 339, as modified by T.D. 54108:

Table, household, kitchen and hospital utensils, and hollow or flat ware, not specially provided for, whether or not containing electrical heating elements as constituent parts:

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

    Not plated with platinum, gold, or silver, and not specially provided for, composed wholly or in chief value of—

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

Other base metal:

\*     \*     \*     \*     \*     \*     \*

           Other _____ \* \* \* 17% ad val.

Paragraph 397, as modified by T.D. 54108:

Articles or wares not specially provided for, whether partly or wholly manufactured:

\*     \*     \*     \*     \*     \*     \*

    Composed wholly or in chief value of iron, steel, copper, brass, \* \* \* but not plated with platinum, gold, or silver, or colored with gold lacquer:

\*     \*     \*     \*     \*     \*     \*

       Not wholly or in chief value of tin or tin plate:

\*     \*     \*     \*     \*     \*     \*

          Other, composed wholly or in chief value of iron, steel, brass, bronze, zinc, or aluminum (except \* \* \*)_____ \* \* \* 19% ad val.

Paragraph 1559(a), as amended by the Customs Simplification Act of 1954:

Par. 1559. (a) Each and every imported article, not enumerated in this Act, which is similar in the use to which it may be applied to any article enumerated in this Act as chargeable with duty, shall be subject to the same rate of duty as the enumerated article which it most resembles in the particular before mentioned; and if any non-enumerated article equally resembles in that particular two or more enumerated articles on which different rates of duty are chargeable, it shall be subject to the rate of duty applicable to that one of such two or more articles which it most resembles in respect of the materials of which it is composed.

The record in *Hi Test Twist Drill Works, Inc., et al.* v. *United States*, 50 Cust. Ct. 265, Abstract 67602, was incorporated herein. The court in that case summarized the testimony as follows:

The single witness who testified at the trial of the issue was the secretary and treasurer of the importing firms involved in the cases at bar. He was a man of long experience in dealing in the United States in drills and drill sets. He testified that he knew of no other containers used in the United States in competition with exhibits 1, 2, and 3, which have, according to the witness, features not possessed by other containers, such as transparency, low cost, ready marketability, flexibility, and permanency. The witness explained that drill bits are sometimes sold in paper envelopes, but that such containers differ from those at bar, in that they are thrown away after purchase, that is to say, they are not used as permanent containers. He further testified that he had never known leather cases to be used for the same purpose as exhibits 1, 2, and 3.

No oral testimony was offered on behalf of the Government, but, on cross-examination of the witness, it was brought out that metal cases are sometimes used for permanent storage of drill sets, and it appears that the witness' firm offers and sells drill sets in metal cases. His testimony on the point, however, was that a separate charge was always made for such metal cases apart from the charge made for the drills.

Plaintiffs' primary contention in that case was that leather cases were not used as containers for drills and, therefore, they were not similar to the imported plastic articles. The court held, however, that the record established that metal cases were in fact used as sale and storage containers for drills and that the imported articles most resembled them in use. The court also went on to say:

It has been frequently pointed out that classification by similitude presupposes differences between the imported article and that enumerated in the particular paragraph of the tariff act in question. *S.S. Kresge Co. et al.* v. *United States, supra.* We would consider that the important similarity of use between the imported articles and metal cases is that they are both used as sale and storage containers. The fact that the imported articles possess certain attributes along the lines of those cited, which are not possessed by metal containers, we do not regard as affecting the very substantial similitude of use as sales and storage containers. *Seattle Marine & Fishing Supply Co. et al.* v. *United States*, 45 CCPA 93, C.A.D. 679.

Exhibits representative or illustrative of the imported merchandise are in evidence. Exhibits 2 and 3 are from the incorporated case. It is to be noted, as to subsequent exhibits, that the articles in litigation are the permanent plastic containers and not certain cardboard pieces or temporary coverings or the tools themselves. The samples may be described as follows:

| Exhibit | Item No. | Further description |
|---|---|---|
| 2 | Case for speed drills | 9–J | Case fairly rigid, size of drills marked on outside. According to illustration, exhibit 4, the items fit into slots and the case is enclosed in a poly bag. |
| 3 | Case for 13-piece drill set | 654 | Case entirely transparent, pocket for each item, sizes marked on outside, two snap fasteners. Illustrated in exhibit 17. |
| 5 | 3-piece auger bit set | 33 | Front transparent, back opaque, pockets for each item, sizes |
| 8 | 5-piece auger bit set | 55 | marked on outside. Exhibit 8 is representative of item 858. |

| Exhibit | | Item No. | Further description |
|---|---|---|---|
| 6 | 7-piece nut driver set | 61 | Front transparent, back opaque, pockets for each item, sizes marked on outside, cases closed with one or two snap fasteners. |
| 7 | 6-piece power bit set | 67 | |
| 12 | 6-piece tap-wrench set | 918 | |
| 13–A | 5-piece jewelers screwdriver set | 404 | |
| 15 | 3-piece chisel set | 958 | |
| 16 | 5-piece screw extractor set | 991 | |
| 10 | 8-piece midget wrench set | 885 | Front transparent, back opaque, pockets for each item, sizes marked on tools, ring for hanging the case. |
| 9 | 5-piece punch and chisel set | 881 | Front transparent, back opaque, pockets for each item, no size markings on case or tools. Exhibit 9 has a ring for hanging. Exhibit 11 has a snap fastener. |
| 11 | 5-piece file set | 889 | |
| 14 | 3-piece file set | 950 | |
| 18 | Illustration of metal case for 13-piece drill set | | |
| A | Catalog pages illustrating | | |
| B | drill sets | | |
| D | Heavy leather case containing an assortment of tools | | |
| E | Leather case containing a small screwdriver and wrench | | |

M. Mario Gang, who was a witness in the previous case, testified as follows: He has been dealing with merchandise like that involved herein for approximately 17 years all over the United States in quantities of 300 dozen to 10,000 dozen an item per year. The merchandise is imported with the tools in the cases. The cases are permanent containers used as protective coverings and as storage containers. The witness explained:

* * * He [the user] puts the tools back into the proper pocket, which is even marked with the size. These pockets have different sizes which are marked on the outside, and he knows, and he's being shown how to put it back into the proper pocket in the proper size.

The witness did not know of any uses for these cases except to contain the particular set of tools. He had seen them used in homes, in the attic, in the workshop, where people would make repairs, and had seen them kept in homes in a closet, in a workshop garage, and in the kitchen. His firm sells these articles to discount stores, department stores, supermarkets, and to the retail and wholesale trades and does not sell the cases separately. He knew of no use for them apart from the tools. The characteristics he believes important in promoting sales include the transparency of the cases enabling the buyer to see the tools he is purchasing and later enabling him to select the one he wishes to use; the size markings on the outside of the cases; the means of hanging up the cases; the closures which prevent moisture from getting at the tools; and the inexpensiveness because there is no separate charge for the cases. The price range for the sets at wholesale ranges from $3.60 to $6 a dozen sets, and the retail price runs from 48 to 98 cents a set. The witness explained that, while the sizes are not marked on the outside of exhibits 9, 11, and 14 or on the tools themselves, the user can see what they are, such as a flat file, a round file, or a three-corner file.

The witness said he had never known of leather cases, wooden cases, or textile cases to be used for the same purposes as these plastic cases. However, he admitted he had never handled leather cases. He added that tool rolls are not used to contain these types of tools. He did not know of a metal case being used for the same purpose as the plastic case except in one instance. He said that the article depicted on page 25 of the catalog, marked exhibit 18, is a metal container similar in use to exhibits 3 and 17. Drills of the same diameter are inserted into the metal container as are put into the plastic pouch. He had seen the metal container used in the garage, in the home, and in the workshop at home. He had never seen the plastic container used in a manufacturing plant, but he had seen the metal containers used by a mechanic when he took tools to a job. A mechanic will not use the plastic container, but both the homeowner and the mechanic will use the metal container. He did not know of any metal containers that are used for any of the other sets before the court.

Mr. Gang testified that he does not buy nontransparent plastic containers for these tools but that he used to sell a nontransparent plastic container in which the tools stuck out and could be seen. He was not familiar with tool sets such as those here which were entirely covered by a completely opaque plastic case nor was he familiar with transparent or nontransparent plastic cases which were not marked with the sizes of the tools on the front.

Defendant called Eugene Behrman, president of E. Behrman & Co., Inc. He testified that he has been associated with the company for 23 years and that it is engaged in importing, assembling small

leather goods, novelties, and gift items, and selling them to retail shops throughout the United States. He sells to luggage and leather goods stores, gift shops, and a few hardware stores. He was familiar with the tools in the exhibits herein either through assembling them in leather cases or through having seen or handled them. He said he had sold articles like exhibit D in 1959. It contains an assortment of different tools and sells for $8 wholesale and $15 retail. For that particular set, he had not imported the tools but had done so for similar sets. The tools and leather cases were imported separately and his firm assembled them.

The witness identified exhibit E as a tool set he is presently selling, consisting of a small screwdriver set and a miniature wrench in a leather case. The leather case in both exhibits D and E serves to protect the tools and for storage. He did not offer the cases separately to the trade but said they would be available. He has sold exhibit E to leather goods stores, gift shops, and men's shops. It is more of a hobbyist set for small work, detail work. He is presently importing similar tool sets in plastic containers.

He said he had used the tools in exhibit D himself and that they are not professional tools but are for amateurs. He would never pack auger bits such as involved here in leather cases. He said:

* * * We sell to luggage and leather goods stores, and gift shops, and when it's packaged like this it becomes an item for our customers to sell.

The witness handles a higher type merchandise than that contained in the exhibits here. When he sells sets of tools in leather cases, he is primarily selling assortments or different tools.

In the instant case, the collector classified all of the articles by similitude to leather cases, apparently by similitude of use. Defendant so states in its brief and claims that the function of leather cases, metal cases, or plastic cases is to protect and store tools and that other factors do not constitute a bar to the similitude of use of the imported plastic cases to leather cases.

In view of the collector's classification, it is presumed that there are in existence articles of leather similar in use to the plastic cases before us. *S. S. Kresge Co. et al.* v. *United States*, 40 Cust. Ct. 145, 149, C.D. 1974, affirmed 46 CCPA 100, C.A.D. 707; *Theo. L. Stern & Co., Inc.* v. *United States*, 39 Cust. Ct. 404, Abstract 61155 (rehearing denied 39 Cust. Ct. 455, Abstract 61256); *Concord Craftsmen, Inc.* v. *United States*, 55 Cust. Ct. 469, Abstract 69606 (appeal dismissed March 22, 1966). The presumption, of course, does not have evidentiary value and cannot be weighed against the evidence produced at the trial. *Marshall Field & Co.* v. *United States*, 20 CCPA 225, 228,

T.D. 46037; *United States* v. *Ignaz Strauss & Co., Inc.*, 37 CCPA 48, .C.A.D. 418.

Plaintiff claims that the plastic cases are not similar in use to anything specified in the tariff act; that they have unique characteristics and do more than protect and store tools. It is contended that, because they are transparent, they permit the user readily to identify the tools he wants to use, and, because in most instances the pockets are marked with the sizes of the tools, the user can easily find the size he wants and can return the tool to the proper pocket. The tools are inexpensive and are of the type sold to home or do-it-yourself users. There is no additional charge for the case.

Defendant introduced into evidence two leather cases, exhibits D and E, which it says are representative of "the leather cases herein." Both of them contain an assortment of different tools, rather than sets of the same tool in different sizes. The tools are of better quality than those in the plastic cases. Exhibit E has two pockets of the same size and the two tools fit into each pocket interchangeably. Exhibit D has no pockets but has leather or elastic loops to hold the tools in place. It contains some wrenches similar to those in exhibit 10, but of a better quality, and other assorted tools. These cases are substantially different from the plastic cases before us except in the sense that they hold and protect tools and can be used for carrying tools from place to place.

There is no affirmative proof that there are leather cases which are used to contain sets of tools like those involved herein or even that there are leather cases with markings and pockets such as the plastic cases here. In the incorporated case, the witness testified that, in the 15 years he has been in business, he had never seen a drill or drill bits contained in leather cases. He gave the same testimony in the instant case but admitted that he had had no experience with leather cases with other types of merchandise. However, in view of his extensive experience in the tool business, it appears that he would have known of such cases, if they existed. Cf. *F. B. Vandegrift & Co., Inc.* v. *United States*, 56 Cust. Ct. 103, C.D. 2617; *Gatton, Neill & Co. (Ltd.)* v. *United States*, 11 Ct. Cust. Appls. 278, 280, T.D. 39084.

It has been held that, to constitute similitude of use, there must be a similitude in the mode of use, and the results must be substantially the same and achieved in substantially the same way. *Pickhardt* v. *Merritt*, 132 U.S. 252, 258; *United States* v. *Godillot & Co.*, 3 Ct. Cust. Appls. 128, 130, T.D. 32382; *United States* v. *Wecolite Co.*, 45 CCPA 54, C.A.D. 672. A broad similarity of usage is not sufficient. *Corporacion Argentina de Productores de Carnes* v. *United States*, 29 CCPA 288, C.A.D. 204; *United States* v. *Freitag & Sons, Inc., et al.*, 21 CCPA 500, T.D. 46961. On the other hand, it has been held that articles cannot be held dissimilar because of

personal preference for one or because one is less expensive or because one has some features which make it superior to the other in the use to which both may be applied. *Seattle Marine & Fishing Supply Co. et al.* v. *United States*, 45 CCPA 93, C.A.D. 679; *Jomac-North, Inc.* v. *United States*, 48 Cust. Ct. 119, C.D. 2321; *British Overseas Airways Corp. et al.* v. *United States*, 34 Cust. Ct. 411 Abstract 59166.

There have been a number of cases before this court involving a comparison between transparent self-adhesive tape and gummed paper. *Vandergrift Forwarding Co. et al.* v. *United States*, 37 Cust. Ct. 18, C.D. 1793 (rehearing denied 37 Cust. Ct. 368, Abstract 60245); *General Systems Service Inc.* v. *United States*, 42 Cust. Ct. 215, C.D. 2089, modified *Same* v. *Same*, 44 Cust. Ct. 46, C.D. 2151; *General Systems Service, Inc.* v. *United States*, 46 Cust. Ct. 222, C.D. 2259 (rehearing denied 47 Cust. Ct. 261, Abstract 65918). It was held in those cases that self-adhesive tapes were not classifiable by similitude to gummed paper. In the case last cited, the court repeated its statment in C.D. 2089, as follows:

In this case, as in the *Vandergrift* case, plaintiff relies on the element of use to support its claim for classification by similitude to gummed paper. That the imported self-adhesive tapes and gummed papers provided for in the law are concededly used for "sealing packages, holding and securing," is not sufficient for classification by similitude. Such a general usage of two comparable products will not satisfy the statute, paragraph 1559, which requires that there must be a substantial sameness in the method of use, and the effect, or the productive result, of the imported product and the one specifically provided for in the law. *Pickhardt* v. *Merritt*, 132 U.S. 252. The vital distinction between these self-adhesive tapes and gummed papers concerns a peculiar characteristic of each. Gummed papers are opaque; self-adhesive tapes are transparent. This distinction makes the comparable products susceptible of producing materially different results when applied to the same general use, particularly in the prominent use of holding and securing printed matter that has value as reading material. Opaque gummed papers are useless for such purpose; transparent self-adhesive tapes must be employed. The two comparable products also differ in their method of use. Self-adhesive tapes are pressure sensitive; gummed papers require moistening for practical use. The differences in use between the two commodities are substantial and are sufficient to deny plaintiff's claim for classification of the merchandise in question by similitude in use with gummed papers. *Murphy* v. *Arnson*, 96 U.S. 131; *Corporacion Argentina de Productores de Carnes* v. *United States*, 29 C.C.P.A. (Customs) 288, C.A.D. 204.

The transparency of the plastic cases at bar facilitates the customer's selection of tools to buy, when they are in the retailer's hands, and, after purchase, he can pick out the right tool at once for the work he wants to do. The tools and their cases are sold in department stores, discount houses, and supermarkets, and are intended for

and purchased by homeowners or do-it-yourself users, who may not be familiar with their exact names and sizes. The transparency feature enables such a purchaser to select readily what he wants to buy. It is also of advantage when he is making repairs or is in his workshop, in that he can see the different tools and sizes at a glance and pick out the one needed for the job at hand. The size marks and the transparency of the case help him to keep the tools in proper order ready for the next usage.

Thus, the plastic cases have functions in addition to the storage and protection of tools which leather, metal, or other nontransparent cases do not have, and are not substantially similar in mode of use.

We are not unmindful of the apparently contrary conclusions in the *Hi Test Twist Drill* case, *supra*, but we feel that the expanded record offered here, as well as the persuasive evidence pointing up the unique aspects that transparency affords the ultimate consumer, requires our reaching a different result.

Plaintiff has, however, conceded that the merchandise represented by exhibit 3 is similar in use to a metal container identified by illustrative exhibit 18. It claims that the metal container is dutiable as a household utensil, or as hollowware, or as an article of metal. The Government says plaintiff has not proved that the metal case is a household utensil or that it is hollowware and, therefore, contends that the protest should be overruled. This does not follow since the metal case is dutiable as an article of metal if not covered by other provisions.

The metal case is not a household utensil within the meaning of paragraph 339, as claimed, since the record shows it is used equally at home and by mechanics to take tools to a job. Therefore, it is not chiefly used in and around homes. *W. J. Byrnes & Co. et al.* v. *United States*, 57 Cust. Ct. 148, C.D. 2746. The metal cases here appear to resemble the metal boxes in *Import–Export Service of New Jersey, etc.* v. *United States*, 18 Cust. Ct. 57, C.D. 1044, which were held not to be hollowware rather than the cookie jars and other containers in *Fabius & Co., Inc., et al.* v. *United States*, 55 Cust. Ct. 305, C.D. 2595, which were held to be hollowware.

On the record presented, we hold that the plastic cases are not similar in use to leather cases and, except as to exhibit 3, have not been shown to resemble in use cases of any other material. All of the cases, except those represented by exhibit 3, are held dutiable at 10 per centum ad valorem under paragraph 1558 of the Tariff Act of 1930, as modified, as nonenumerated manufactured articles. In view of plaintiff's concession, the merchandise represented by exhibit 3 is held dutiable by similitude at 19 per centum ad valorem under paragraph 397, as modified, as articles in chief value of metal.

To that extent the protests are sustained. As to all other claims, they are overruled. Judgment will be entered accordingly.